# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| SHANNON CONTINI and AARON BEATTY on behalf of themselves and all other similarly situated, | ) ) ) ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| PRENTICE CAPITAL MANAGEMENT, L.P., | ) |
|  | ) |
| Defendant. | ) |

Civil Action No. 10-30180-MAP

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT

### INTRODUCTION

Plaintiffs allege that, between December of 2008 and February of 2009, they were terminated from their employment at the Pittsfield headquarters of the now defunct toy retailer, KB Toys, Inc. ("KB Toys").  They further claim that they did not receive the sixty-days notice of their terminations required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, *et seq.*  They therefore seek unpaid wages and benefits on behalf of themselves and a putative class of similarly situated former KB Toys employees.  Because KB Toys has wound down its affairs through proceedings in the Delaware Bankruptcy Court, Plaintiffs assert their claims not against KB Toys, but against Prentice Capital Management, L.P. ("Prentice"), based on allegations that Prentice owned and controlled KB Toys and was responsible for the terminations.

In their effort to hold Prentice liable for KB Toys' alleged WARN Act violations, Plaintiffs rely on the labor law doctrine of "single employer" liability.  Complaint, ¶ 1.  The

allegations advanced to support this legal fiction are set forth in a single paragraph of Plaintiffs' eight-page Complaint.  There, Plaintiffs allege that Prentice, through an affiliate, owned controlling shares of KB Toys stock (Compl.¶ 27(a)), appointed certain Prentice employees to KB Toys' board and appointed KB Toys' CEO (*id.* ¶ 27(b)), "exercised de facto control" over KB Toys' labor practices, and ordered the "mass layoffs" at KB Toys' headquarters. (*id.* ¶ 27(c)).  While Plaintiffs allege with some specificity the percentage of KB Toys stock that Prentice held and the names of the individuals Prentice appointed to the KB Toys Board and as CEO, the Complaint contains no factual allegations to support Plaintiffs' conclusory assertion that Prentice exercised *de facto* control over KB Toys or ordered the mass layoffs.  Nor does the Complaint allege the existence of any other factors that would justify holding it liable for KB Toys' alleged employment practices.

The conclusory allegations of the Complaint are no more sufficient to state a claim than were the allegations of antitrust conspiracy at issue in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) or the allegations of constitutional deprivations at issue in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  In rejecting those allegations, the Supreme Court articulated a heightened pleading standard that governs motions to dismiss under Fed. R. Civ. P. 12(b)(6).  As the United States Court of Appeals for the First Circuit has recently observed, the pleading standard set forth in *Twombly* applies to all civil actions.  *Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico*, 2010 WL 3718858, at *1 (1st Cir. September 22, 2010) (*Iqbal* holds that *Twombly* applies to all civil actions).  Courts reviewing similar complaints seeking to establish "single employer" liability for alleged WARN Act violations through the prism of *Twombly* and *Iqbal* have dismissed them.  As in those cases, Plaintiffs' bare-bones Complaint in this case fails to establish a plausible basis for imposing liability for alleged employment

violations on a company that was not the Plaintiffs' employer.  The Complaint should, therefore, be dismissed.

## ARGUMENT

### I.    <u>The Pleading Standard</u>

Fed. R. Civ. P. 8(a)(2) requires a Complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of this requirement is to "give the Defendant fair notice of what the … claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957), quoted in *Twombly*, 550 U.S. at 555.  In *Twombly*, the Court articulated the standard for compliance with Rule 8(a)(2):

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  …Factual allegations must be enough to raise a right of relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)…."

*Id.* (citations omitted).

The Court in *Twombly* held that a complaint that alleged an antitrust conspiracy failed to state a claim because, while it alleged parallel conduct among the defendants, it did not contain sufficient facts plausibly suggesting the existence of an agreement.  Two years later, in *Iqbal*, the Court held that the pleading standard announced in *Twombly* applies to all civil actions, not just antitrust lawsuits.  129 S. Ct. at 1953.  ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ….").  It also clarified how courts should apply the standard.

First, the Court summarized the *Twombly* standard:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id</u>., at 570.  A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id., at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. at 557 (brackets omitted).

129 S. Ct. at 1949.

The Court then set forth "[t]wo working principles" underlying *Twombly*.  *Id.* at 1940. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.  The Court suggested that courts entertaining motions to dismiss follow a two-pronged approach: first, identifying pleadings that are not entitled to an assumption of truth because they are conclusory, and then determining whether any well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 1941.  Under this approach, complaints that do not establish more than a mere possibility that the Defendant is liable are subject to dismissal. *See SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from mere conjecture, the complaint is open to dismissal.")

As will be shown below, the Supreme Court's two-pronged analysis requires dismissal of the Complaint in this case.

## II.    The "Single Employer" Test

The WARN Act provides, in pertinent part: "An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such

4

an order …." 29 U.S.C. § 2102(a).  The statute defines "employer" as a "business enterprise"

that employs at least 100 full-time employees.  29 U.S.C. § 2101.  Department of Labor ("DOL")

regulations issued under the WARN Act provide that "wholly or partially owned" subsidiaries of

a parent company may be "treated as separate employers or as a part of the parent … depending

upon the degree of their independence from the parent."  20 C.F.R. § 639.3(a)(2).  Plaintiffs'

claim is predicated on the theory that Prentice exercised such pervasive control over KB Toys

that the two companies may be considered a single employer under the WARN Act and the DOL

regulations.

The First Circuit has not addressed the standards for establishing single employer liability

for purposes of a claim under the WARN Act.[1]  Other courts that have addressed the issue have

analyzed affiliated companies' potential WARN Act liability through the application of three

different tests: (1) state law tests used in various types of cases to determine whether to pierce

the corporate veil; (2) the "integrated enterprise" test developed under federal labor law prior to

the WARN Act regulations; and (3) a test that applies a non-exhaustive set of five factors set

forth in the WARN Act regulations promulgated by DOL.  *See Pearson v. Component Tech.*

*Corp.*, 247 F.3d 471, 487-494 (3d Cir. 2001) (analyzing various tests).  *See also, United*

*Paperworkers Int'l Union v. Alden Corrugated Container Corp.,* 901 F. Supp. 426 (D. Mass.

1995)(Collings, M.J.)(analyzing "single employer" status using all three tests).  The five DOL

factors are:

       (i)      common ownership;

---

[1] The First Circuit has applied the "integrated enterprise" test described below for purposes of determining single employer status under the National Labor Relations Act, *Penntech Papers, Inc. v. NLRB,* 706 F.2d 18, 24-25 (1st Cir. 1983), as well as Title VII of the Civil Rights Act of 1964.  *Torres-Negron v. Merck & Co., Inc.*, 488 F.3d 34, 42-43 (1st Cir. 2007) (court assumes without deciding that integrated enterprise test applies).  The First Circuit has not yet had an opportunity to rule on whether the test applies to WARN Act claims.

      (ii)     common directors and/or officers;

      (iii)    *de facto* exercise of control;

      (iv)    unity of personnel policies emanating from a common source; and

      (v)     the dependency of operations.

20 C.F.R. 639.3(a)(2).[2]

Plaintiffs' allegation that Prentice is their "employer" under the WARN Act tracks the first three DOL factors. Compl. ¶ 27(a)-(c). Because these factors are very different from the stringent requirements of state law veil-piercing theories, and because Plaintiffs invoke the "*de facto* exercise of control*" factor which is not part of the integrated enterprise test, it is clear that Plaintiffs are relying on the DOL factors to establish Prentice's liability. Because the DOL factors are arguably the most lenient of the three tests, and because Plaintiffs' Complaint is insufficient even applying the DOL factors, solely for purposes of this Motion to Dismiss Prentice is willing to assume that the DOL factors apply.[3]

## III.  Plaintiffs' Complaint Fails to State a Claim of Single Employer Liability

### A.  Plaintiffs Do Not Allege The Existence of Two of the Five DOL Factors.

As an initial matter, Plaintiffs' Complaint fails to allege the existence of two of the DOL factors. Specifically, the Complaint is entirely devoid of any allegation that KB Toys and Prentice maintained unified personnel policies or shared a dependency of operations.

---

[2] The "integrated enterprise" test applies four factors:  (1) interrelation of operations, (2) common management, (3) centralized control of labor relations and (4) common ownership. *Penntech Papers,* 706 F.2d at 25. While this test omits "de facto control" as a separate factor, the First Circuit held in *Penntech*, "the fundamental inquiry is whether there exists overall control of critical matters at the policy level." *Id.*

[3] In the event that the Court denies this Motion to Dismiss, Prentice reserves the right to argue at a later stage in the proceedings that one of the other tests for "single employer" liability, including the "integrated enterprise" test adopted by the First Circuit in *Penntech Papers* and *Torres-Negron,* should apply.

1.     Unity of Personnel Policies

The fourth DOL factor, "unity of personnel policies," focuses "less on the hierarchal relationship between the companies . . . than on whether the companies actually functioned as a single entity with regard to its relationships with employees." *Pearson*, 247 F.3d at 499.  Some courts have examined complaints for factual allegations of a particularized interest by an equity firm in the personnel policies of the company it owned or any specific personnel policy directives issued by the equity firm to the company's directors or officers.  *See In re Consolidated Bedding, Inc.*, 432 B.R. 115, 122 (Bankr. D. Del. 2010).  Other courts have considered "whether the two companies in question engaged in centralized hiring and firing, payment of wages, and personnel and benefits recordkeeping." *In re APA Transp. Corp. Consolidated Litigation*, 541 F.3d 233, 245 (3d Cir. 2008).  "[C]ontroll[ing] the hiring and firing of the company's president and chief executive officer, and monitor[ing] the hiring of a few other high-level managers . . . simply is not enough to find a 'unity' of personnel 'policy.'" *Pearson*, 247 F.3d at 500.  The Complaint contains no allegations concerning any unity of personnel policies between Prentice and KB Toys, let alone the far-reaching involvement in the development or implementation of personnel policies contemplated by this factor.

2.     Dependency of Operations

Similarly, the fifth DOL factor of "dependency of operations" has been interpreted to mean "the existence of arrangements such as the sharing of administrative or purchasing services, interchanges of employees or equipment, and commingled finances." *Id.* at 500 (citations omitted).  Once again, Plaintiffs' allegations are not only inadequate, but completely silent with respect to this factor.

**B.      Plaintiffs' Conclusory Allegation of "*De Facto*" Control Is Not Entitled to the Assumption of Truth.**

The third DOL factor is whether the Defendant exercised *de facto* control over the Plaintiffs' employer.  Courts generally agree that this factor is the most important in establishing an affiliated entity's liability.  *See id.* at 504.  However, "the '*de facto* exercise of control' factor is not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership."  *Id.* at 503.

With respect to this factor, Plaintiffs allege:

Through its complete control of the board, Defendant exercised de facto control over the labor practices governing the Plaintiffs, and made the decision to order the mass layoffs at the Facility resulting in the class members' termination.

Complaint, ¶ 27(c).  Paragraph 28 similarly alleges that "the Defendant ordered 'mass layoffs' at the Facility as that term is defined by 29 U.S.C. § 2101(a)."

Plaintiffs do not allege any facts to support the bald allegation that Prentice exercised *de facto* control over KB Toys' labor practices or ordered the mass layoffs.  Rather, Paragraph 27(c) of the Complaint represents the type of "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," that the Court in *Iqbal* held "do not suffice."  129 S. Ct. at 1949; *see also Guippone v. BHS&B Holdings, LLC*, No. 09 Civ. 1029, 2010 WL 2077189, at *5 (S.D.N.Y. 2010) (allegation that equity firm's employees who sat on employer's Board of Directors were involved in decision to close the employer's facilities was "not sufficient to support th[e] inference" that the equity firm exercised *de facto* control).  Under *Iqbal*, therefore, the Court may not assume the truth of Plaintiffs' allegations of *de facto* control, and they carry no weight in the Rule 12(b)(6) analysis.

8

### C.  Plaintiffs' Allegations Concerning the First Two DOL Factors Do Not Establish a Plausible Claim.

Because the Complaint entirely fails to plead two of the five DOL factors, and pleads the most important factor in a purely conclusory way, it should be clear without any additional analysis that the Complaint fails to state a claim of single employer liability.  Moreover, although the remaining allegations concerning the DOL factors may satisfy the first prong of the *Iqbal* test, they fail to satisfy the second prong of establishing a plausible theory of liability.

As with traditional veil-piercing analysis, more is required under the WARN Act to hold a parent liable for the acts of its subsidiary than mere common ownership and overlapping officers and directors.  If these two factors alone were enough, then a parent's liability for the employment practices of its subsidiary would be the rule rather than the exception.  Presumably for this reason, courts have held that, "by itself, ownership - and even ownership coupled with common management - is not a sufficient basis for liability."  *Pearson*, 247 F.3d at 494;  *APA Transport.*, 541 F.3d at 244 ("the first two factors - common ownership and common directors and/or owners - are not sufficient to deem two entities a 'single employer'").

Because the first two factors alone are insufficient, and the others either have not been pled at all or have been pled inadequately, no further analysis is necessary to conclude that the Complaint should be dismissed.  However, a closer look reveals that the second factor also is not adequately pled.

"The second factor of the DOL test 'ordinarily looks to whether the two nominally separate corporations: (1) actually have the same people occupying officer or director positions with both companies; (2) repeatedly transfer management-level personnel between the

companies; or (3) have officers and directors of one company occupying some sort of formal

management position with respect to the second company.'"  *Guippone*, 2010 WL 2077189, at

*5 (quoting *Pearson*, 247 F.3d at 498).  Plaintiffs' allegations, even if taken as true for purposes

of Rule 12(b)(6), do not meet these requirements.  Plaintiffs allege:

> Defendant appointed each of the members of the KB Toys board in order to
> completely control and dominate all decisions of KB Toys.  Specifically,
> Defendant appointed Mario Ciampi a partner of Defendant and the *de facto*
> chairman of the board; Defendant appointed Daniel Platt, an employee of
> Defendant, to the Board of KB Toys; Defendant appointed Matt Hoffman, an
> employee of Defendant, to the board of KB Toys and Defendant appointed
> Andrew Bailen as the CEO of KB Toys.

Compl. ¶ 27.  Plaintiffs do not allege that any Prentice officers or directors were officers of KB

Toys.  They also do not allege that any Prentice personnel participated in the management of KB

Toys.  The allegations that Prentice personnel served on the KB Toys Board, and that Prentice

appointed KB Toys' CEO, are not enough to satisfy the fifth DOL factor.  *See Consolidated*

*Bedding*, 432 B.R. at 122; *see also Pearson*, 247 F.3d at 498 ("[T]he 'common officers and/or

directors' prong of the test should look only to whether some of the same individuals comprise

(or, at some point, did comprise) the formal management team of each company.")

### D.     The Weight of Authority Favors Dismissal

Courts reviewing complaints making similar allegations and applying the heightened

pleading standards of *Twombly* and *Iqbal* have ruled in favor of dismissal.  The case most on

point, *Consolidated Bedding*, involved a complaint filed by some of the same counsel that

represent plaintiffs in this case.  There, the Delaware Bankruptcy Court dismissed with prejudice

a complaint against an equity firm (American Capital) that served as the financier and primary

equity holder for distressed mattress manufacturers charged with violations of the WARN Act.

Plaintiffs alleged that

(1) American Capital was the majority shareholder and/or majority equity holder and lead financial sponsor of the debtors.

(2) Directors appointed to the boards of the debtors by American Capital acted as its agents.

(3) Because the appointed Directors were mere agents of American Capital, the equity firm exercised *de facto* control over the debtors when they conducted mass layoffs. Through these agents, American Capital also directed the debtors to close facilities, file for bankruptcy, and sell property. Further, American Capital was responsible, through these agents, for the appointment of officers and hiring of bankruptcy counsel.

(4) The decision to conduct mass layoffs attributable to American Capital through its appointed Directors demonstrated a "unity of personnel policies."

*See id.* at 121-24.

The first factor of "common ownership" was undisputed. *Id.* at 122. With respect to second factor, the court held that plaintiffs failed to allege sufficient facts to support the *Pearson* requirement that "some of the same individuals comprise . . . the formal management team of each company." *Id.* at 123, quoting *Pearson*, 247 F.3d at 498. The court also noted that, even had the second factor been properly alleged, the motion to dismiss would still have been granted because of *Pearson*'s dictate that the first two DOL factors are not a sufficient basis for single employer liability. 432 B.R. at 123, n.4.

The *Consolidated Bedding* court next held that the third factor of "*de facto* exercise of control" was not met because plaintiffs did not allege "facts showing that the AmCap Directors were wearing their American Capital 'hats' while making difficult decisions for the Debtors to close the Facilities and file for bankruptcy." *Id.* at 123. The fourth factor of "unity of personnel policies" was unmet because there was neither alleged a particularized interest by the equity firm in any debtor personnel policies nor any specific personnel policy directives issued by the equity

firm to the debtors' directors or officers. *Id.* at 122. Finally, as in this case, no allegations were

made regarding the fifth factor, "dependency of operations."[4] *Id.* at 122, 123.

Similar WARN Act claims were dismissed against several investment firms in *Guippone*.

In that case, six investment firms owned the controlling share of a holding company of a

discount clothing store chain that allegedly conducted mass layoffs. 2010 WL 2077189, at *1.

The United States District Court for the Southern District of New York reviewed each of the five

DOL factors in light of *Twombly.* The court found that the factor of common ownership was met

as to the employer's direct parent, but held that common ownership "is of limited significance to

the inquiry at hand, since it is well established that stock ownership alone is not grounds for

holding a parent liable for its subsidiary's actions." *Id.* at *5 (quoting *Vogt v. Greenmarine*

*Holding, LLC,* 318 F. Supp. 2d 136, 142 (S.D.N.Y. 2004)). Based on a series of management-

level relationships quite different from those alleged here, the court next found that the factor of

common directors and officers was met as to all of the defendants. However, invoking Supreme

Court precedent, the *Guippone* court stated:

> [A]s the Supreme Court has noted: "It is entirely appropriate for
> directors of a parent corporation to serve as directors of its
> subsidiary. Since courts generally presume that the directors are
> wearing their 'subsidiary hats' and not their 'parent hats' when
> acting for the subsidiary, it cannot be enough [in and of itself] to
> establish liability." *Vogt,* 318 F. Supp. 2d at 142 (citing [*United*
> *States v. Bestfoods*, 524 U.S. 51, 69-70 (1998)]. Thus, this factor
> counsels in favor of liability for all defendants but is also of limited
> importance.

2010 WL 2077189, at *5. The court next rejected plaintiffs' argument that their allegation that

defendants collectively decided to engage in the mass layoffs satisfied the "unity of personnel

---

[4] A very similar case to *Consolidated Bedding*, brought against the same defendant, was decided by a different presiding judge of the same court, and also resulted in dismissal. *Marshal v. NewStarcom Holdings, Inc.*, No. 08-50079 (Bankr. D. Del., Oct. 13, 2009).

policies" factor.  *Id.* at *6 ("while the allegations that defendants directed the employment loss that triggered this lawsuit would otherwise carry considerable weight under this factor, given the conclusory nature of plaintiff's assertions, it does not counsel in favor of liability here from a joint employer status.")  Finally, after also finding the complaint deficient with respect to the "dependency of operations" factor, the court turned to the factor of *de facto* control.  Here, too, the court held that plaintiff's allegations that defendants caused the employer to file for Chapter 11 bankruptcy and ordered mass layoffs were too conclusory to satisfy *Twombly*, and dismissed the claims asserted against those defendants for whom no more specific facts supporting the factor of de facto control were alleged.  *Id.,* at *7.[5]

At least one court after *Twombly* has denied a motion to dismiss a complaint relying solely on the same type of conclusory allegations Plaintiffs assert here to support their "single employer" theory of WARN Act liability.  *Hiles v. Inoveris, LLC*, No. 2:09-cv-53, 2009 WL 3671007 (S.D. Ohio Nov. 4, 2009).  As the Delaware Bankruptcy Court noted in *Consolidated Bedding*, however, *Hiles* was distinguishable because the complaint alleged that the employer's parent company "directly owned and operated the Facility" at which the layoffs occurred.  432 B.R. at 125.  Moreover, as the *Consolidated Bedding* court also observed, the *Hiles* court improperly relied on pre-*Twombly* precedent.  Although the *Hiles* court acknowledged the Supreme Court decisions, the *Consolidated Bedding* court concluded that the *Hiles* "findings are at odds with the letter and spirit of *Twombly* [and] *Iqbal* . . . that a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.,* quoting *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).   In light of the Supreme Court's clarification

---

[5] The *Guippone* court denied the motion to dismiss with respect to the employer's direct parent based on more specific allegations of *de facto* control not alleged here.

in *Iqbal* that the *Twombly* standard applies to all civil actions, as the First Circuit recently recognized in *Mendez Internet Mgmt. Servs., Inc.*, this Court should follow *Consolidated Bedding* and dismiss Plaintiffs' insufficient Complaint.

### CONCLUSION

Because Plaintiffs' Complaint fails to adequately plead a plausible basis for holding Prentice liable for KB Toys' alleged WARN Act violations, it fails to state a claim upon which relief can be granted, and the Court should grant Prentice's Motion to Dismiss.


Dated:  November 1, 2010                              Respectfully submitted,

                                                     PRENTICE CAPITAL MANAGEMENT,
                                                     L.P.


                                                     By its attorneys,


                                                     /s/ Donald R. Frederico
                                                     Donald R. Frederico, BBO# 178220
                                                     Jeffrey M. Burns, BBO# 661448
                                                     GREENBERG TRAURIG, LLP
                                                     One International Place
                                                     Boston, MA 02110
                                                     T: (617) 310-6000
                                                     F: (617) 310-6001
                                                     fredericod@gtlaw.com
                                                     burnsj@gtlaw.com

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this document was filed through the ECF system on November 1, 2010 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first class U.S. mail as those counsel not identified as registered participants.

<u>   /s/ Jeffrey M. Burns   </u>