IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISON

| | |
|---|---|
| SHANNON CONTINI and AARON BEATTY on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PRENTICE CAPITAL MANAGEMENT, L.P.,<br><br>Defendant. | CASE No. 3:10-cv-30180-MAP |

**MEMORANDUM IN OPPOSITION**

**COME NOW** Plaintiffs in the above-titled action and respectfully submit this memorandum in opposition to Defendant Prentice Capital Management, L.P.'s ("Movant") Motion to Dismiss Plaintiffs' Complaint ("Complaint") Pursuant to Fed. R. Civ. P. 12(B)(6) filed November 1, 2010 ("Motion to Dismiss").  The Motion to Dismiss should be denied as moot because the Complaint, at which the Motion to Dismiss was directed, has been superseded by an amended complaint filed pursuant to Fed. R. Civ. P. 15(a)(1)(B).  Should the Court deem the Motion to Dismiss as directed to Plaintiffs' amended complaint, the Motion to Dismiss should be denied because the allegations of the amended complaint satisfy Fed. R. Civ. P. 8(a)(2).

**I.     PROCEDURAL BACKGROUND**

Plaintiffs filed the Complaint on August 27, 2010.  (Doc. 1).  On November 1, 2010, Movant filed the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 12).  Contemporaneously therewith, Movant filed a Memorandum of Law in Support of Defendant's Motion to Dismiss.  (Doc. 13).  On November 15, 2010, Plaintiffs filed the

First Amended Class Action Complaint and Jury Trial Demand ("Amended Complaint") pursuant to Fed. R. Civ. P. 15(a)(1)(B). (Doc. 15).

## II.   STANDARD FOR AMENDING COMPLAINT

"A party may amend its pleading once as a matter of course: … if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading *or 21 days after service of a motion under Rule 12(b)*, (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B) (emphasis added).

## III.   PLEADING STANDARD

The standard to be applied to allegations of a complaint is found in Rule 8(a) of the Federal Rules of Civil Procedure. "Rule 8(a) provides in relevant part that '[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .' Fed. R. Civ. P. 8(a)(2). … The purpose of the notice pleading requirements set forth in Fed. R. Civ. P. 8(a) is to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. This court recognizes that while a court may dismiss a pleading that does not comply with the notice pleading requirements of Rule 8, the exercise of this power is generally reserved for a pleading that is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Phelps v. Local 0222, No. 09-11218-JLT, 2010 U.S. Dist. LEXIS 88007, at *12 - 13 (D. Mass. Aug. 20, 2010) (internal citations omitted).

"Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. 'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.' 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.' 'This second principle recognizes that the court's assessment of the pleadings is 'context specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not show[n] — that the pleader is entitled to relief.'" Phelps, 2010 U.S. Dist. LEXIS 88007, at *11-12 (quoting Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)).

## III.   ARGUMENT

### A.   The Motion To Dismiss Is Moot.

The Motion to Dismiss should be denied because it is moot. Plaintiffs filed the Complaint on August 27, 2010. (Doc. 1). On November 1, 2010, Movant filed the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 12). Contemporaneously therewith, Movant filed a Memorandum of Law in Support of Defendant's Motion to Dismiss. (Doc. 13). The Motion to Dismiss was directed at the Complaint. On November 15, 2010, Plaintiffs filed the Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B).[1] (Doc. 15). The Amended Complaint has superseded the Complaint. The

---

[1] Under that Fed. R. Civ. P. 15(a)(1)(B), Plaintiffs "may amend [their] pleading once as a matter of course: … if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading *or 21 days after service of a motion under Rule 12(b)*, (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B) (emphasis added). The Complaint is a pleading to which a responsive pleading is required. See Fed. R. Civ. P. 12(a)(1)(A). The Amended Complaint was filed on November 15, 2010; less than the 21 days after the Motion to Dismiss was served. Therefore, the Amended Complaint was properly filed pursuant to Fed. R. Civ. P. 15(a)(1)(B).

3

Motion to Dismiss is directed at the Complaint, not the Amended Complaint. Therefore, the Motion to Dismiss is directed at an inactive complaint and should be denied as moot.

  B. The "Single Employer" Allegations Of The Amended Complaint Satisfy Fed. R. Civ. P. 8(a)(2).

If the Court should deem the Motion to Dismiss as directed to the Amended Complaint, the Motion to Dismiss should be denied because the allegations in the Amended Complaint satisfy Fed. R. Civ. P. 8(a)(2).

Plaintiffs allege in the Amended Complaint that Defendant and Plaintiffs' nominal employer KB Toys constituted a "single employer" under the WARN Act. See Doc. 15, ¶ 28. "A Department of Labor ('DOL') regulation lists five factors to be considered in determining whether a partially or wholly owned subsidiary should be treated as a distinct 'employer' under the WARN Act, or instead as a 'single employer' along with its parent. These factors include: '(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.' 20 C.F.R. § 639.3(a)(2). United Automobile, Aerospace & Agricultural Implement Workers of America Local 157 v. OEM/Erie Westland, LLC., 203 F. Supp. 2d 825, 832-33 (E.D. Mich. 2002) (quoting 20 C.F.R. 639.3(a)(2)). "In the context of the fact-specific inquiry into whether a company can be held responsible under WARN for the act of a related company, no one factor set out by the DOL is controlling, and all factors need not be present for liability to attach." Vogt v. Greenmarine Holding, LLC, 318 F.Supp.2d 136, 142 (S.D.N.Y. 2004). District Courts within the First Circuit, including this honorable Court, have recognized that the DOL Factor test (promulgated as 20 C.F.R. 639.3(a)(2)) is one of a few tests that may be applied to determine whether a parent and a subsidiary

4

constitute a single employer under the WARN Act.  See United Paperworkers Int'l Union v. Alden Corrugated Container Corp., 901 F. Supp. 426, 439 (D. Mass. 1995); Bennett v. Roark Capital Group, Inc., No. 09-421-P-S, 2010 U.S. Dist. LEXIS 98310, at *9-10 (D. Me. Sept. 16, 2010); Adames-Milan v. Centennial Communs. Corp., 500 F. Supp. 2d 14, 27 (D.P.R. 2007).

On November 1, 2010, Movant filed the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 12).  Contemporaneously therewith, Movant filed a Memorandum of Law in Support of Defendant's Motion to Dismiss. (Doc. 13). Therein, Movant argues that "Plaintiffs' Complaint fails to state a claim of single employer liability," because (1) "Plaintiffs do not allege the existence of two of the five DOL factors," (2) "Plaintiffs' conclusory allegation of 'de facto' control is not entitled to the assumption of truth," (3) "Plaintiffs' allegations concerning the first two DOL factors do not establish a plausible claim," (4) "the weight of authority favors dismissal." (Doc. 13). Assuming such contentions are directed at the "single employer" allegations contained within the Amended Complaint, the Motion to Dismiss should be denied because the Amended Complaint contains sufficient factual allegations in support of the "single employer" allegation to "give the defendant fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests."

In its Memorandum of Law in Support of Defendant's Motion to Dismiss ("Memo in Support"), Defendant relies heavily on non-binding precedent from without the First Circuit.[2]  In so doing, the Defendant has ignored the common sense ruling of a District Court within the First Circuit.

---

[2] Defendant relies heavily on precedent from courts within the Third Circuit, including cases such as Pearson v. Component Tech. Corp., 247 F.3d 471 (3d Cir. 2001) (Doc. 13, at 5), In re Consolidated

In <u>Bennett v. Roark Capital Group, Inc.</u>, the U.S. District Court for the District of Maine considered a motion to dismiss a complaint containing single employer allegations. <u>Bennett</u>, 2010 U.S. Dist. LEXIS 98310, at *1. In <u>Bennett</u>, the individual plaintiffs were former employees of a company called Wood Structures, Inc ("WSI"). <u>Id.</u> at *4. In their complaint, the plaintiffs brought, among other claims, a WARN Act claim against "Roark Capital Group, Inc., Roark Capital Partners, LP, Roark Capital Partners Parallel, LP, and RC Wood Structures Holding Corp. (jointly "Roark Capital")".[3] Plaintiffs complaint alleged "that Wood Structures, Inc. and one or more of the Defendants which comprise Roark Capital are a single employer, integrated enterprise, and/or joint employer…." Ex. A, at 2. To support this allegation, plaintiffs specifically alleged the existence of the following factors:

> At all relevant times herein, one or more of the Defendants which comprise Roark Capital and Wood Structures, Inc. had common management. At all relevant times herein, there was common ownership of Wood Structures, Inc. and one or more of the Defendants which comprise Roark Capital. At all relevant times herein, there were common directors and/or officers of Wood Structures, Inc. and one or more of the Defendants which comprise Roark Capital. At all relevant times herein, one or more of the Defendants which comprise Roark Capital exercised de facto control over Wood Structures, Inc. At all relevant times herein, one or more of the Defendants which comprise Roark Capital exercised centralized control over Wood Structures Inc.'s labor relations. At all relevant times herein, one or more of the Defendants which comprise Roark Capital and Wood Structures, Inc. had common personnel policies emanating from a common source.

Ex. A, ¶¶ 62-68.

To further support the existence of these factors, the plaintiffs made the following factual allegations:

---

Bedding, Inc., 432 B.R. 115, 122 (Bankr. D. Del. 2010) (Doc. 13, at 7), and <u>In re APA Transp. Corp. Consolidated Litigation</u>, 541 F.3d 233, 245 (3d Cir. 2008) (Id.). None of these cases are binding on this Court.

[3] For the Court's convenience, the Plaintiffs have attached a copy of the Second Amended Complaint from the <u>Bennett</u> case as Exhibit A.

> At all times relevant to this action, Defendant Roark Capital Group and Defendant RC Wood Structures Holding Corporation shared the same principal office address as Wood Structures, Inc.: 1180 Peachtree Street, Ste. 2500, Atlanta, Georgia 30309. In a press release dated September 13, 2005, Roark Capital Group announced that it had acquired Wood Structures, Inc. In a Manta company profile dated May 7, 2009 and a Portland Press Herald article dated March 17, 2009, Roark Capital Group was listed as the "parent company" of Wood Structures, Inc. On May 7, 2009, Roark Capital Group's website identified Wood Structures, Inc. as one of its "portfolio companies." At all relevant times to this action, Jeffrey Keenan was the President of Roark Capital Group and also the President of RC Wood Structures Holding Corporation as well as an officer of Wood Structures, Inc. At all relevant times to this action, Lawrence DeAngelo was a member of the Board of Directors for Wood Structures, Inc. and a managing director for Roark Capital Group, as well as a manager for RC Wood Structures Holding Corporation. At all relevant times to this action, Susan Herzog was a member of the Board of Directors for Wood Structures, Inc. and Vice President of Roark Capital Group. At all relevant times to this action, Daniel Lonergan was a Vice President and Assistant Secretary of Wood Structures, Inc. and an officer of Roark Wood Structures Holding Corporation (which later became RC Wood Structures Holding Corporation). Defendant Roark Capital Group sent John P. Jordan, one of its Senior Analysts and Michael Lee, one of its Senior Associates to Wood Structures, Inc. to Maine in around 2008 and 2009 where they worked on Wood Structures, Inc.'s business operations, including reviewing all of Wood Structures, Inc.'s accounting information, list of vendors, and accounts payable. Upon information and belief, one or more of the Defendants was involved in critical decisions regarding the operation of the business of Wood Structures, Inc., including leading negotiations with lenders for Wood Structures, Inc. Upon information and belief, one or more of the Defendants ultimately made the decisions to have Wood Structures, Inc. file for Chapter 11 bankruptcy and to not oppose the motions filed by the U.S. Trustee and creditor, Orix Finance Corp. on March 30, 2009, to convert that filing to a Chapter 7 bankruptcy.

Ex. A, ¶¶ 34-43.

Roark Capital moved to dismiss plaintiffs' complaint. <u>Bennett</u>, 2010 U.S. Dist. LEXIS 98310, at *1. In their motion to dismiss, Roark Capital contended, among other things, that: "Count II, which alleges that the Defendants are liable under the federal WARN Act, must be dismissed because the plaintiffs have not pled sufficient facts to state a claim that Defendants should be held liable on any of the joint enterprise or 'single employer' theories on which the claims depend. With respect to key elements of the

theories, plaintiffs make only 'threadbare legal conclusions' with no allegations of fact. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)."[4]

The Court denied dismissal of plaintiffs WARN Act claims against Roark Capital finding that "Count II of Plaintiffs' Second Amended Complaint meets the pleading standard laid out by the Supreme Court in Iqbal and Twombly." Bennett, 2010 U.S. Dist. LEXIS 98310, at *12.  The Court reasoned that:

> [U]nder either [the Integrated Enterprise or DOL Single Employer factors] test, the Court finds the factual allegations in the Second Amended Complaint and the reasonable inferences that can be drawn therefrom make a plausible claim for relief against the Defendants as parent corporations of WSI. Specifically, although paragraphs 62 through 69 of the Complaint contain somewhat boiler-plate allegations, those allegations must be considered in the context of the more detailed, relevant factual allegations in paragraphs 34 through 43 and vice versa. Reading all of these paragraphs together, the Court believes Plaintiffs have a plausible claim that one or more Defendants exercised control over WSI's labor relations and ran WSI as an integrated enterprise. Alternatively, it is likewise plausible on its face that WSI did not have a sufficient degree of independence from one or more Defendants.

Id. at 11.

Just as the U.S. District Court for the District of Maine denied Roark Capital's motion to dismiss Bennett plaintiffs' complaint so too should this honorable Court deny Movant's Motion to Dismiss.  The factual allegations contained within the Amended Complaint are at least as detailed as those contained within the Bennett complaint.  The Amended Complaint alleges the following facts in support of Plaintiffs' allegation that Movant and KB Toys shared common ownership:

> PKBT Funding, LLC is a subsidiary of Defendant organized under the laws of the State of Delaware. Defendant and PKBT Funding, LLC occupied the same physical offices located at 623 Fifth Avenue, 32nd Floor, New York, NY 10022. PKBT Funding, LLC's management team was composed of principals or partners of Defendant, including Jonathan Duskin. Defendant organized PKBT Funding, LLC for the purpose of acquiring the equity of KB Toys. To that end,

---

[4] For the Court's convenience, Plaintiffs have attached a copy of Roark Capital's motion to dismiss from the Bennett case as Exhibit B.

> Defendant provided $20 million to PKBT Funding, LLC. With the capital provided by Defendant, PKBT Funding, LLC purchased approximately 40,000 shares (≈ 90%) of the common stock of KB Toys and 100% of the senior, non-voting preferred stock of KB Toys. PKBT Lending, LLC is a subsidiary of Defendant organized under the laws of the State of Delaware. Defendant and PKBT Lending, LLC occupied the same physical offices located at 623 Fifth Avenue, 32nd Floor, New York, NY 10022. PKBT Lending, LLC's management team was composed of principals or partners of Defendant, including Jonathan Duskin. Defendant organized PKBT Lending, LLC for the purpose of lending money to KB Toys. With capital provided by Defendant, PKBT Lending, LLC lent at least $25 million to KB Toys.

Doc. 15, ¶¶ 30-40.

These allegations are at least as detailed as those made in the Bennett complaint to support the common ownership factor of the single employer test. Compare Ex. A, ¶¶ 35-37 and Doc. 15, ¶¶ 30-40. From these allegations a fair and reasonable inference may be drawn that Movant shared common ownership with KB Toys.

The Amended Complaint alleges the following facts in support of Plaintiffs' allegation that Movant and KB Toys shared common officers and directors:

> At the time of Plaintiffs' termination, KB Toys had four directors on its Board of Directors. Three of those directors were employees of Defendant who held positions within Defendant's formal management. Mario Ciampi was the managing partner of Defendant. Mr. Ciampi also served as co-head of private special capital investments and retail and consumer products consultant for Defendant. Mr. Ciampi was a director on the board of directors of KB Toys and served as the chairman of the board. Matthew Hoffman was the general counsel for Defendant. Mr. Hoffman was a director on the board of directors of KB Toys. Daniel Platt was the co-head of special investments for Defendant. Mr. Platt was a director on the board of directors of KB Toys. Additionally, other partners of Defendants have occupied seats as directors on KB Toys' board of directors, including Jonathan Duskin, Charles Phillips, and Michael Zimmerman.

Doc. 15, ¶¶ 42-50.

These allegations are at least as detailed as those made in the Bennett complaint to support the common officers and directors factor of the single employer test. Compare Ex. A, ¶¶ 38-41 and Doc. 15, ¶¶ 42-50. From these allegations a fair and reasonable

inference may be drawn that Movant shared common officers and directors with KB Toys.

The Amended Complaint alleges the following facts in support of Plaintiffs' allegation that Movant exercised *de facto* control over KB Toys:

> 5Upon information and belief, each of the KB Toys board members appointed by Defendant at all times acted in the best interest of Defendant, to the detriment of KB Toys. Defendant had the exclusive power to appoint directors to KB Toys' board of directors. Additionally, Defendant had the exclusive power to appoint officers to KB Toys' executive staff. Using such powers, Defendant appointed its partners and employees, such as Mario Ciampi, Matthew Hoffman, and Daniel Platt to KB Toys' board of directors. Defendant also appointed officers of KB Toys including Andrew Bailen. On or about December 2008 through February 2009, the Defendant ordered "mass layoffs" at the Facility. Defendant directed KB Toys to file a Chapter 11 bankruptcy petition on December 11, 2008. Defendant directed KB Toys to engage counsel to represent KB Toys in bankruptcy. Defendant directed KB Toys to layoff employees and file for bankruptcy during the period following the Thanksgiving holiday shopping weekend of 2008 in an effort to maximize the available cash for payments to secured lenders including Defendant. To further increase cash on hand Defendant directed KB Toys' treasurer Charles Stengl to withhold and defer payments to KB Toys' vendors during the period preceding the Thanksgiving holiday shopping weekend of 2008 and the subsequent bankruptcy filing.

Doc. 15, ¶¶ 52-57.

These allegations are at least as detailed as those made in the Bennett complaint to support the *de facto* exercise of control factor of the single employer test. Compare Ex. A, ¶¶ 42-43 and Doc. 15, ¶¶ 52-57. From these allegations, combined with the allegations made in support of the common ownership and common officers and directors factors, a fair and reasonable inference may be drawn that Movant exercised de facto control KB Toys.

The Amended Complaint alleges the following facts in support of Plaintiffs' allegation that Movant and KB Toys shared an interdependency of operations:

> Defendant assigned its own employees to work at the Facility. Employees of Defendant, such as Melanie Cox, directed employees of KB Toys on such operational details as store design and layout, new product introduction, mark

>downs and merchandise flow.  Such employees of Defendant were not formally employed by KB Toys.  At least one such employee of Defendant maintained an office at the Facility where he reported on a daily basis.

Doc. 15, ¶ 59.

These allegations are at least as detailed as those made in the Bennett complaint to support the interdependency of operations factor of the single employer test.  Compare Ex. A, ¶¶ 42 and Doc. 15, ¶¶ 59.  From these allegations a fair and reasonable inference may be drawn that Movant and KB Toys shared some interdependency of operations.

When considered together, the above-quoted allegations contained within the Amended Complaint are more than a mere formulaic recitation of elements or legal conclusions.  When compared to the factual allegations made in the Bennett case, it is clear that the allegations contained within the Amended Complaint are reasonably detailed factual allegations that are entitled to an assumption of truth.  If accepted as true, these allegations show that Defendant was not merely monitoring an investment or exercising the normal incidents of stock ownership.  Rather, these allegations give rise to the fair and reasonable inference that KB Toys did not operate independently from Defendant.  Therefore, the Amended Complaint states a plausible claim that Defendant and KB Toys constituted a single employer under the WARN Act.

### IV.    CONCLUSION

The Motion to Dismiss should be denied as moot because the Complaint at which the Motion to Dismiss was directed has been superseded by the Amended Complaint, which was filed after the Motion to Dismiss.  Should the Court redirect the Motion to Dismiss from the Complaint and toward the Amended Complaint, the Motion to Dismiss should nonetheless be denied because the Amended Complaint states a plausible claim that Defendant and KB Toys constituted a single employer under the WARN Act.

Dated: November 15, 2010

        Respectfully submitted,

        /s/ Jesse I. Redlener
        DALTON and FINEGOLD, LLP
        Jesse I. Redlener (BBO #646851)
        34 Essex Street
        Andover, MA 01810
        P: (978) 269-6420
        F: (978) 470-8338

        LANKENAU & MILLER, LLP
        Stuart J. Miller (admitted *pro hac vice*)
        132 Nassau Street, Suite 423
        New York, NY 10038
        P: (212) 581-5005
        F: (212) 581-2122

        THE GARDNER FIRM, P.C.
        Mary E. Olsen (admitted *pro hac vice*)
        David C. Tufts (admitted *pro hac vice*)
        210 S. Washington Avenue
        Mobile, AL 36602
        P: (251) 431-8100
        F: (251) 433-8181

        Cooperating Counsel for
        THE NLG MAURICE AND JANE SUGAR
        LAW CENTER FOR ECONOMIC AND
        SOCIAL JUSTICE, a non-profit law firm
        733 St. Antoine, 3rd Floor
        Detroit, MI 48226
        P: (313) 962-6540

        *Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

   I, Jesse Redlener, hereby certify that on November 15, 2010, I caused copies of the foregoing to be served on the following via first class mail and electronic transmission:

Donald R. Frederico, Esq.
Jeffrey M. Burns, Esq.
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
T: (617) 310-6000
F: (617) 310-6001
fredericod@gtlaw.com
burnsj@gtlaw.com

             /s/ Jesse I. Redlener