## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHANNON CONTINI and AARON BEATTY on behalf of themselves and all other similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>PRENTICE CAPITAL MANAGEMENT, L.P.,<br><br>         Defendant. | Civil Action No. 10-30180-MAP |

## DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

Pursuant to the Court's Scheduling Order of December 16, 2010, Defendant Prentice Capital Management, L.P. ("Prentice") submits this Reply to Plaintiffs' Opposition to Motion to Dismiss.

## I.  INTRODUCTION

Plaintiffs are two former employees of now-defunct retailer KB Toys, Inc. ("KB Toys") who allege that their former employer failed to comply with the WARN Act at the time the company underwent mass layoffs, and who seek to recover a judgment against the private equity firm that had invested in KB Toys, Defendant Prentice Capital Management, L.P. ("Prentice"). Prentice has moved to dismiss based on the federal labor laws' strong presumption that a parent company is not liable for the acts of its subsidiary, and Plaintiffs' failure adequately to plead facts sufficient to overcome this presumption under the Department of Labor's (DOL) five-factor test for establishing that the parent and subsidiary should be treated as a "single employer."

Plaintiffs have filed a Memorandum in Opposition to Prentice's motion which only underscores the defects in Plaintiffs' pleading.  In it, they misstate the heightened pleading

standard of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009); they misapprehend the "common officers and directors" factor of the single employer test; they demonstrate the inadequacy of their allegations concerning the "dependency of operations" factor; they repeat their reliance on conclusory allegations for "the *de facto* exercise of control" factor; and they continue to fail to address the "unity of personnel policies" factor which is absent from their pleading.  As the Opposition continues to make clear, Plaintiffs do not allege that any Prentice personnel occupied management positions at KB Toys through which they controlled the retailer's day-to-day operations; they do not allege that Prentice controlled KB Toys' labor and employment policies or practices or had any involvement in them whatsoever; and the allegations that they principally rely on to defeat the strong presumption that Prentice and KB Toys should be treated as separate entities are too conclusory to be entitled to the assumption of truth.

Also, in arguing that the weight of authority supports denial of Prentice's motion, Plaintiffs misplace reliance on cases that are distinguishable on their facts, and some that are wrongly decided.  Although there have been no WARN Act single employer decisions in the United States Court of Appeals for the First Circuit, First Circuit cases applying related "single employer" tests under other federal labor laws involve parent-subsidiary relationships far more extensive and intertwined than the relationship alleged here.  Plaintiffs in this case do not, and could not, allege that Prentice is a retailer, a wholesaler, a manufacturer, or engaged in any business whose operations were connected in any way to KB Toys.  Plaintiffs do not, and could not, allege that Prentice provided services to KB Toys, that KB Toys supplied products to Prentice, that KB Toys incorporated any personnel policies or used in its own human resources department any employee handbooks or similar materials of Prentice, or that any Prentice

2

officers or directors controlled the day-to-day operations of KB Toys.  What clearly emerges from Plaintiffs' Amended Complaint and Memorandum in Opposition is a portrait of an equity firm that invested capital and extended financing to an otherwise unrelated retail business and that merely monitored its investment through participation on the retailer's board.  Taking as liberal a view of the allegations as *Twombly* and *Iqbal* permit, Plaintiffs have failed to state a claim for single employer liability.  The Amended Complaint should, therefore, be dismissed.

## II.    ARGUMENT

### A.    Plaintiffs Mischaracterize the Applicable Pleading Standard

As noted in Prentice's original Memorandum, the United States Court of Appeals for the First Circuit has held that the pleading standard of *Twombly/Iqbal* applies in all civil actions. *Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico*, 621 F.3d 10, 13 (1st Cir. 2010).  Plaintiffs do not contest the applicability of the heightened standard.  Instead, Plaintiffs accuse Prentice of "attempting to require a standard of pleading beyond what *Iqbal* and *Twombly* actually require."[1]  Opp. at 2.  Rather than point to any specific faults in Prentice's description of the pleading standard, Plaintiffs cite to a recent First Circuit decision and two recent decisions of this Court in arguing that Prentice has attempted to set the bar too high.  Plaintiffs' argument is incorrect.  The standard that Prentice sets forth in its Memorandum, and the description of how it is to be applied, is taken almost entirely from quoted language from the *Twombly* and *Iqbal* decisions.  Prentice has stated it accurately.

Plaintiffs distort the pleading standard by selectively quoting from a recent First Circuit decision.  They suggest that factual allegations that go beyond merely reciting "the formal

---

[1] This Court, in *Brace v. Massachusetts*, 673 F. Supp. 2d 36, 42 (D. Mass. 2009) (Ponsor, J.), questioned the applicability of the heightened standard in non-complex cases.  This issue has since been resolved with the First Circuit's clarification that *Twombly/Iqbal* applies to all civil actions.

elements of a cause of action" necessarily are entitled to the presumption of truth, quoting *Tasker*

*v. DHL Ret. Sav. Plan,* 621 F.3d 34, 39 (1st Cir. 2010).  Opp. at 5.  The full quote from *Tasker,*

however, reveals that the bar is set higher:

> A complaint must only contain "a short and plain statement of the
> claim showing that the pleader is entitled to relief." Fed. R. Civ. P.
> 8(a)(2).  But even though a complaint need not plead "detailed
> factual allegations," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555,
> 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), it nonetheless must
> "contain sufficient factual matter, accepted as true, to 'state a claim
> to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* ___ U.S.
> ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)(quoting
> *Twombly,* 550 U.S. at 570, 127 S. Ct. 1955).  Thus, a complaint
> must do more than recite the formal elements of a cause of action;
> it must include "factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged." *Id.*  *"If the factual allegations in the complaint are too
> meager, vague, or conclusory to remove the possibility of relief
> from the realm of mere conjecture, the complaint is open to
> dismissal."* *Tambone,* 597 F.3d at 442 (citing *Twombly,* 550 U.S.
> at 555, 127 S. Ct. 1955).

621 F.3d at 38-39 (emphasis added).

Further, the cases on which Plaintiffs rely do not support their interpretation of the

standard.  Plaintiffs' characterization of the holding of the First Circuit decision in *Sepulveda-*

*Villarini v. Dep't of Education*, Nos. 08-2283, 09-1801, 2010 WL 5093220 (1st Cir. Dec. 10,

2010), finds no basis in the text of the opinion and is divorced from the facts of the case.  In

*Sepulveda-Villarini,* the court recognized that *Twombly* and *Iqbal* applied to the plaintiff's

complaint asserting claims under the Americans with Disabilities Act, but held that the

heightened pleading standard did not require the plaintiff to plead "the details of medical

evidence in order to bolster the likelihood that a causal connection will prove out as fact." *Id.* at

*4.  *Twombly* did not require dismissal, the court held, because "*Twombly* cautioned against

thinking of plausibility as a standard of likely success on the merits; the standard is plausibility

4

assuming the pleaded facts to be true and read in a plaintiff's favor." *Id.* In this case, Prentice does not argue that Plaintiffs must plead facts that would establish a likelihood of success on the merits. Rather, Prentice argues that the factual allegations of the Amended Complaint must not be "to meager, vague or conclusory to remove the possibility of relief from the realm of mere conjecture," as the First Circuit held in *SEC v. Tambone*, 597 F. 3d 436, 442 (1st Cir. 2010) (*en banc)*, and repeated in *Tasker*.

Plaintiff also misplaces reliance on Magistrate Judge Dein's Report and Recommendation in *Phelps v. Local 0222*, No. 09-11218-JLT, 2010 WL 3342031 (D. Mass. Aug. 20, 2010). In *Phelps*, Magistrate Judge Dein recommended dismissal of a *pro se* complaint from a serial filer who was civilly committed for reasons of insanity. The Report and Recommendation quotes some of the same language from *Twombly* and *Iqbal* that Prentice quotes in its supporting Memorandum, including the Court's holding that "conclusory statements 'are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). Although Magistrate Judge Dein quotes some pre-*Twombly* decisions that had applied the lower pleading standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), the Supreme Court disavowed that standard in *Twombly*. *See Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007). Ultimately, Magistrate Judge Dein concluded that the complaint failed to meet even the most liberal pleading standard applicable in *pro se* cases, and recommended that the District Judge dismiss the complaint. Understood in this context, Plaintiffs' reliance on *Phelps* to support a lower standard is misplaced.

In the other case cited repeatedly by Plaintiffs, *Pruell v. Caritas Christi*, No. 09-11466-GAO, 2010 WL 3789318, at *1-2 (D. Mass. Sept. 27, 2010), Judge O'Toole dismissed without prejudice a putative class action for claimed violations of the Fair Labor Standards Act and other

laws stemming from the alleged failure to pay hourly employees for all time worked.  There too, the Court recognized that *Twombly* and *Iqbal* applied, and there is nothing in the Court's description of the pleading standard that is inconsistent with Prentice's Memorandum.  The Court observed that "pleading specific evidence or detailed factual allegations beyond what is needed to make the claim plausible is not required," *id.* (citing *Twombly*, 550 U.S. at 570), but Prentice is not arguing to the contrary.  Rather, Prentice, applying the approach defined in *Iqbal,* maintains that the conclusory allegations of the Amended Complaint are not entitled to the presumption of truth, and that the non-conclusory allegations are not sufficient to establish a plausible right to relief.  Plaintiffs' reliance on these decisions should not distract the Court from its duty to apply the two Supreme Court decisions faithfully to the allegations set forth in this case.

### B.  Plaintiffs' Opposition Misapplies the DOL Factors

Plaintiffs' arguments that they have sufficiently pleaded the DOL factors are incorrect, and do not support the denial of Prentice's Motion to Dismiss.  First, Plaintiffs recite their allegations of common ownership, which they acknowledge Prentice does not dispute.  Opp. at 5-6.  The language they quote simply alleges that Prentice owned a funding subsidiary and a lending subsidiary which invested in and lent money to KB Toys.  This section of the Opposition adds nothing to the analysis.

Plaintiffs' argument concerning the "common officers and directors" factor also misses the mark.  In its Motion to Dismiss, Prentice highlighted Plaintiffs' failure to allege that any director of Prentice held a management position within KB Toys, an allegation that courts have held is critical to satisfying this prong of the single employer test.  In their Opposition, Plaintiffs get the analysis backwards, arguing that they have adequately pleaded that certain individuals were part of the management team of Prentice.  Opp. at 8.  The point that seems lost on Plaintiffs

is that they need to allege that Prentice personnel were senior managers *of their employer, KB Toys,* not just that they were managers of Prentice. After strenuously arguing the wrong point, Plaintiffs finally address the relevant issue, but do so inadequately. They argue that it is sufficient to allege that Prentice personnel occupied positions as directors of KB Toys, even if they were not officers, because "[i]t is not implausible that 'directors' occupy positions within the formal management of KB Toys." *Id.* Yet this is precisely what courts have held is not enough to satisfy the "common officers and directors" prong. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 498 (3rd Cir. 2001) ("[T]he 'common officers and/or directors' prong of the test should look only to whether some of the same individuals comprise (or, at some point, comprise) the formal management team of each company.") To overcome the "strong presumption" against parent liability for the employment actions of the subsidiary, a party must plead and prove that the parent's officers or directors held management positions within the subsidiary through which they exercised control over the subsidiary's day-to-day operations. Alleging only that officers and directors of the parent served on the board of the subsidiary, without more, is not enough.

Plaintiffs' argument about the "dependency of operations" factor also falls short. First, Plaintiffs acknowledge that this factor is "virtually identical to the integrated enterprise test's 'interrelation of operations' factor," Opp. at 9, which was at issue in some of the First Circuit cases discussed *infra*. They then rely on the allegations of a single, short paragraph of their Amended Complaint, paragraph 59. The only allegation in this paragraph that has any semblance of specificity is the allegation that "[e]mployees of Defendant, such as Melanie Cox, directed employees of KB Toys on such operational details as store design and layout, new product introduction, mark downs and merchandise flow." This bare-bones allegation is too meager and

7

vague to warrant the assumption of truth, and the other allegations of paragraph 59 are too conclusory to warrant such an assumption.  Even were the Court to assume the truth of all of the allegations in paragraph 59, when contrasted against the facts of the First Circuit cases discussed below that address the interrelation of operations factor, it becomes clear that Plaintiffs have not adequately pleaded "dependency of operations."

Finally, Plaintiffs' arguments do not support a finding that they have adequately pleaded that Prentice exercised *de facto* control over KB Toys.  First, Plaintiffs recite the combined allegations of paragraphs 52-57 of the Amended Complaint.  That recitation includes allegations that Prentice ordered the "mass layoffs" at the KB Toys facility, that Prentice directed KB Toys to file a petition in bankruptcy and hire bankruptcy counsel, and that Prentice directed KB Toys' treasurer to withhold payments to KB Toys' vendors.  The bald allegations that Prentice ordered the mass layoffs and the bankruptcy filing, without any supporting facts, are precisely the types of "meager, vague, or conclusory" allegations that the First Circuit has held insufficient to survive a motion to dismiss.  Indeed, other courts have held virtually identical allegations to be too conclusory to be entitled to a presumption of truth.  *See Guippone v. BH S&B Holdings LLC*, 2010 WL 077189, at *7 (S.D.N.Y. May 18, 2010) ("Plaintiff pleads no supporting facts for his assertion that defendants collectively planned and caused Steve and Barry's bankruptcy filing."); *In re Consolidated Bedding*, 432 B.R. 115, 122 (Bankr. D. Del. 2010) ("Plaintiffs have not . . . alleged facts showing that the AmCap Directors were wearing their American Capital 'hats' while making difficult decisions for the Debtors to close the Facilities and file for bankruptcy.")  The conclusory allegations recited at page 11 of Plaintiffs' Opposition are not enough to satisfy the heightened pleading standard of *Twombly/Iqbal*.

BOS 46,713,068v2 1-28-11

Plaintiffs also argue that Prentice failed to address other paragraphs of the Amended Complaint that support their allegations of *de facto* exercise of control. Opp. at 12-13. The paragraphs of the Amended Complaint that they reference involve other prongs of the DOL single employer test, not the *de facto* control prong. In essence, Plaintiffs seek to conflate the various prongs of the test and argue that the allegations supporting the existence of other prongs are sufficient to plead the control prong. Even if the other allegations lend support to a finding of control, the DOL control factor must require some additional showing or it is meaningless. Plaintiffs' efforts to bootstrap their other allegations into an allegation about the exercise of *de facto* control is misguided.

### C. First Circuit Decisions Applying Single Employer Tests Demonstrate That Liability Depends on Facts Not Alleged Here.

Finally, Plaintiffs argue that "[t]here is ample authority upon which the Court may rely to deny the Motion to Dismiss." Opp. at 18. Each of the cases they cite is either distinguishable, wrongly decided, or both. Two of those decisions[2] were addressed in Prentice's initial Memorandum and those arguments will not be repeated here. Another of the cases cited, *Blair v. Infineon,* 720 F. Supp. 2d 462, 473-74 (D. Del. 2010), involved allegations of shared recruitment, umbrella benefit and severance plans, financing dependency, consolidated financial reports, and siphoning of funds. No such commingled operations are alleged by Plaintiffs here. Similarly, the allegations of the Amended Complaint do not rise to the level of those in *Austen v. Catterton Partners V, LP,* 709 F. Supp. 2d 168, 174-78 (D. Conn. 2010), which involved far more extensive overlap between the companies' officers, directors and managers and the parent's running of the day-to-day operations of its subsidiary through a management consultant.

---

[2] *Bennett v. Roark Capital Group, Inc.*, No. 09-421-P-S, 2010 U.S. Dist. LEXIS 98310 (D. Me. Sept. 16, 2010); *Hiles v. Inoveris, LLC*, No. 2:09-CV-53, 2009 U.S. Dist. LEXIS 102430 (S.D. Ohio Nov. 4, 2009). *See* Def.'s Mem. in Supp. at 18-19 & n. 8.

Although Plaintiffs rely on district court decisions within the First Circuit, notably absent from their Memorandum in Opposition is any reference to the single employer decisions of the First Circuit Court of Appeals. Admittedly, there appear to be no decisions of the First Circuit that apply the WARN Act's single employer test. However, the court has applied single employer tests under other federal labor laws, and a review of those decisions underscores the shortcomings of the Amended Complaint.

In their Opposition, Plaintiffs acknowledge that "District Courts within the First Circuit, including this honorable Court, have recognized that the DOL Factor test (promulgated as 20 C.F.R. 639.3(a)(2)) is one of a few tests that may be applied to determine whether a parent and a subsidiary constitute a single employer under the WARN Act." Opp. at 4. At the time it promulgated the WARN Act regulations, DOL made clear that the single employer test under the WARN Act was intended to summarize existing law, not to create new law. In the District of Massachusetts case cited by Plaintiffs, *United Paperworkers International Union v. Alden Corrugated Container Corp.,* 901 F. Supp. 426 (D. Mass. 1995), Magistrate Judge Collings quoted the following passage from the Federal Register:

> The intent of the regulatory provision relating to independent contractors and subsidiaries is not to create a special definition of these terms for WARN purposes; the definition is intended only to summarize existing law that has developed under State Corporations laws and such statutes as the NLRA, the Fair Labor Standards Act (FLSA) and the Employee Retirement Income Security Act (ERISA). The Department does not believe that there is any reason to attempt to create new law in this area especially for WARN purposes when relevant concepts of State and federal law adequately cover the issue. Thus, no change has been made in the definition. Similarly, the regulation is not intended to foreclose any application of existing law or to identify the source of legal authority for making determinations of whether related entities are separate.

10

*Id.* at 436-37, quoting 54 Fed. Reg. 16045 (Apr. 10, 1989).

Because the WARN Act test was not meant to create new law, it is useful to examine how the First Circuit has applied the single employer tests in other contexts. None of the First Circuit cases involving single employer liability remotely resemble this case, where the parent is an investment company whose principal relationships with the subsidiary are the advancement of funding and occupying positions on the subsidiary's board. The stark contrast between the facts that the First Circuit has found relevant in other single employer cases (including one case where the court affirmed summary judgment for the defendant) and the facts alleged here further supports dismissal.

1. *Penntech.* In *Penntech Papers, Inc. v. NLRB,* 706 F.2d 18 (1st Cir. 1983), the National Labor Relations Board (NLRB) found that Penntech Papers and its two subsidiaries had failed to bargain in good faith over the effects of a decision to close one of the subsidiaries. Penntech, the parent, operated a paper mill in Pennsylvania. Its subsidiary, T. P., purchased the stock of Kennebec, which also operated a paper mill. Ultimately, the Kennebec mill was closed, and the employees were laid off, which led to the dispute under the National Labor Relations Act. The NLRB found that the three companies had engaged in unfair labor practices, based on its finding that the companies constituted a single employer within the meaning of 29 U.S.C. § 152(2). The companies appealed the "single employer" determination, and the First Circuit affirmed.

In upholding the finding that the companies were a single employer, the court found an interrelation of operations based on the following facts: Penntech's purchases of all of Kennebec's production and resale of it to the public as a Penntech product; Penntech's purchasing of all of Kennebec's materials and supplies; the use of Penntech's computers to

11

process Kennebec's payroll and employee wage statements; and Penntech's control over all of

Kennebec's sales, customer relations, credit and billing.  The First Circuit also found that the

various entities shared common management because the same individual served as president of

Penntech and T.P., and two other Penntech officers were officers of T.P.  In addition, the

president of these two entities not only was a director of Kennebec, but also "exercised ultimate

authority over Kennebec's operations.  He spent over 50% of his time at Kennebec between

December 1976 and the shutdown in March 1977."  *Id.* at 25.  He also controlled

experimentation with Kennebec's paper making process and told Kennebec employees that

production at the mill had to be increased.  "In short, [he] exercised substantial control over the

operations at Kennebec."  *Id.* Other officers of Penntech were also directly involved in paper

production at Kennebec.

The facts that the First Circuit found relevant in *Penntech* bear no resemblance to the

facts alleged here.  Plaintiffs do not allege that Prentice participated in the day-to-day operations

of KB Toys.  Nor do they allege that any officer of Prentice controlled KB Toys' operations.

Rather, the Amended Complaint describes an investment company whose business has no

substantial operational connection to the business of the subsidiary.  Such allegations do not rise

to the level of single employer liability contemplated by the DOL regulation or the labor laws

that preceded it.  *See also NLRB v. Pizza Pizzaz, Inc.*, 646 F.2d 706, 708 (1st Cir. 1981)

(deferring to ALJ finding of single employer liability where two restaurants shared common

ownership, served the same specialty beverage, filed a consolidated tax return, and shared the

same officer/general manager who was responsible for all labor relations matters including hiring

and firing of employees, setting wages, and employee grievance proceedings, but noting whether

these facts were sufficient was "debatable").

2. *U-Haul.* The First Circuit addressed single employer liability again in *Romano v. U-Haul International*, 233 F.3d 655 (1st Cir. 2000). In that case, a jury had found the plaintiff's direct employer and the employer's parent company liable as a single employer for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The Court of Appeals affirmed the verdict, applying the integrated-enterprise test in determining whether the parent (U-Haul International) could be held liable for the acts of its subsidiary (U-Haul of Maine). The court cited a litany of ways in which the parent participated in the operations of the subsidiary, placing special emphasis on the parent's comprehensive control of the subsidiary's employment policies and practices:

> U-Haul International sets human resources and personnel policies, establishes the wage scale, the pay day, and all fringe benefits, must approve pay in excess of the scale, limits shift premiums and the hours of part-timers, processes payroll, prohibits payroll advances, must approve any rehire, maintains duplicate personnel records, and invites employees of U-Haul of Maine to present complaints concerning discrimination, sexual harassment and leaves of absence to U-Haul International's Human Resources Department.

*Id.* at 668. No similar allegations are presented here. Indeed, neither the Amended Complaint nor Plaintiff's Memorandum in Opposition discuss the factor of "unity of personnel policies emanating from a common source" set forth in the DOL regulations.

3. *Engelhardt.* In *Engelhardt v. S.P. Richards Co.,* 472 F.3d 1 (1st Cir. 2006), the court upheld the entry of summary judgment for an employer, holding that the integrated-enterprise test was not met and that therefore the number of employees at the parent and subsidiary could not be aggregated for purposes of meeting the 50-employee threshold under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (the "FMLA"). Significantly, the court rejected single

13

employer liability despite the existence of a far more extensive relationship between the parent

(GPC) and the subsidiary (SPR) than anything alleged here.  For example:

> SPR adopted GPC's personnel policies on attendance, sexual
> harassment, substance abuse, corporate conduct and network
> security.  Many of SPR's handbooks, benefits brochures,
> information sheets, registration forms and paycheck stubs carry the
> GPC logo or letterhead instead of, or in addition to, SPR's logo.
> SPR's employees are eligible to participate in GPC-administered
> employee health insurance, life insurance, 401(k) and pension
> plans.  GPC also issues SPR's payroll checks.  SPR pays an
> administrative fee and reimburses GPC for all benefits and wages
> paid to SPR's employees.

472 F.3d at 3.  In describing the single employer test, the court held:

> "Normally the legal entity which employs the employee is the
> employer under FMLA.... [A] corporation is a single employer
> rather than its separate establishments or divisions." 29 C.F.R. §
> 825.104(c).  However, a subsidiary is treated differently, as there is
> a "strong presumption that a parent corporation is not the employer
> of its subsidiary's employees." *Lusk v. Foxmeyer Health Corp.,*
> 1289 F.3d 773, 778 (5th Cir. 1997)(citation omitted).  Our task is
> to clarify how to distinguish between an entity that is a division of,
> and therefore part of a corporation, and one that is a subsidiary and
> therefore a separate entity.

*Id.* at 4.  The court further defined the issue as "whether GPC controls enough facets of SPR's

business and operations, such that it has not maintained its economic distinctness." *Id.* at 5.

The First Circuit found that the single employer test was not met because there was no

common management, no interrelation between the operations of the two companies, and no

centralized control over labor policies.  With respect to the second and third factors of

interrelation of operations and centralized control over labor policies, the court held:

> [T]here is little, if any, evidence to suggest any interrelation
> between operations of the two companies, the integrated employer
> test's second factor.  SPR has a separate headquarters, human
> resource department, records and record keeping, and separate
> worksites which fulfilled wholly distinct functions.  The nature of

14

their businesses is also distinct – GPC is in the auto-parts retailing business whereas SPR is in the office-supply wholesaling business. Thus, SPR is not a GPC "division" whereby upper echelons of control are centralized and efficiencies are realized through consolidation of redundant administrative, human resource, and management functions.

Furthermore, the third factor also weighs against finding that the two companies are an integrated employer as the facts reveal that SPR made its own, independent decisions with respect to labor relations. Only SPR had the power to determine how many employees it needs, and whether, when and whom to hire and fire to meet those needs. . . . There is no evidence to suggest that SPR deferred to GPC in making hiring, firing, assignment, scheduling, or compensation decisions.

*Id.* at 6-7 (citation omitted).

The allegations of the Amended Complaint in this case do not distinguish it from *Engelhardt*. Plaintiffs do not allege facts that, even if proved, would establish the interrelatedness of operations as contemplated by the First Circuit's decision. Not only is there no allegation of consolidation of functions, but as in *Engelhardt,* the nature of Prentice's and KB Toys' businesses were entirely distinct – one is a private investment firm and the other was a toy retailer. Additionally, the First Circuit held that SPR's extensive reliance on and use of GPC's personnel policies, programs and materials was not sufficient to establish the centralized control of personnel policies factor for the integrated-enterprise test. Here, Plaintiffs do not allege any such connection between KB Toys' personnel policies and Prentice's, and do not even argue that the "unity of personnel policies" factor is met. If the facts in *Engelhardt* were insufficient to establish single employer liability, then the allegations of the Amended Complaint also fail to state a claim.

4. *Torres-Negron.* More recently still, the First Circuit addressed single employer liability in *Torres-Negron v. Merck & Company, Inc.,* 488 F.3d 34 (1st Cir. 2007). In that case,

15

plaintiff brought claims for employment discrimination under Title VII against Merck &
Company, Inc. and two of its subsidiaries.  One of the subsidiaries, Merck-Mexico, allegedly
engaged in the discrimination, and plaintiff alleged that the other subsidiary, Merck-PR, was
liable under the integrated enterprise test.  The Court of Appeals reversed the entry of summary
judgment in favor of Merck-PR.  In doing so, it observed that "there is ample evidence of a
reciprocal relationship between Merck-PR and Merck-Mexico," and pointed out "that Merck-PR
and Merck-Mexico perform substantially the same function." *Id.* at 42.  The court distinguished
*Engelhardt,* referencing its conclusion in *Engelhardt* that there was "'little, if any, evidence to
suggest any interrelation between operations of the two companies,'" and its finding "that the
nature of the two businesses was distinct – one was in the auto-parts retailing business whereas
the subsidiary was in the office-supply wholesaling business." *Id.*, quoting *Engelhardt*, 472 F.3d
at 6. Further distinguishing *Engelhardt,* the court cited evidence "of frequent interchange of
employees between Merck-PR and Merck-Mexico, centralized Merck & Co. human resources
and personnel policies, as well as a unified system through which all 'expatriated' employees are
funneled." *Id.*  The court in *Torres-Negron* also relied on evidence that Merck-PR "had
substantial control over [plaintiff's] employment." *Id.* at 43.  Specifically, "Merck-PR paid
Torres, provided her benefits and retained the power to terminate her." *Id.*  Additionally, "the
termination was ultimately approved by human resources personnel from Merck & Co.'s Latin
American division, on Merck-PR's recommendation after consulting with Merck-Mexico." *Id.*

Although the court in *Torres-Negron* reversed the grant of summary judgment for the
affiliated entity, the stark contrast between the facts of that case and the facts alleged here is
stunning.  Plaintiffs here do not allege anything close to the interrelation of operations between
Prentice and KB Toys that was evidenced between the two Merck subsidiaries.  Nor do they

16

allege any similar centralized control of personnel policies and employment practices. Plaintiffs do not allege that Prentice paid them, provided their benefits, or retained the power to terminate their employment, nor that Prentice controlled KB Toys' day-to-day employment decisions. Rather, the facts alleged in the Amended Complaint more closely resemble the facts of *Englehardt* which, as a matter of law, were insufficient to support single employer liability.

## III.   CONCLUSION

Plaintiffs' Memorandum in Opposition mischaracterizes the pleading standard that applies to the Amended Complaint and misinterprets the law of single employer liability. Applying the correct pleading standard, and viewing the Amended Complaint through the prism of the most analogous First Circuit precedent, compels the conclusion that the Amended Complaint fails to state a claim. It should be dismissed, with prejudice.

PRENTICE CAPITAL MANAGEMENT, L.P.

By its attorneys,

/s/ Donald R. Frederico
Donald R. Frederico, BBO# 178220
Jeffrey M. Burns, BBO# 661448
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
T: (617) 310-6000
F: (617) 310-6001
fredericod@gtlaw.com
burnsj@gtlaw.com

## CERTIFICATE OF SERVICE

I certify that this document was filed through the ECF system on January 28, 2011, and will be sent electronically to the registered participants and by first class U.S. mail to counsel not identified as registered participants.

/s/ Donald R. Frederico

BOS 46,713,068v2 1-28-11