### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

SHANNON CONTINI and AARON BEATTY on
behalf of themselves and all others similarly situated,

Plaintiffs,

CASE No. 3:10-cv-30180-WGY

v.

PRENTICE CAPITAL MANAGEMENT, L.P.,

Defendant.

### [PROPOSED] FINAL ORDER PURSUANT TO FED. R. CIV. P. 23 APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEFENDANT AND THE SETTLEMENT CLASS AND GRANTING RELATED RELIEF

Before the Court is *Plaintiffs' Motion for Order Granting Final Approval of the Class Action Settlement* ("Motion for Final Approval") (Dkt. No. 72). Therein, Plaintiffs Shannon Contini and Aaron Beatty ("Named Plaintiffs" or "Class Representatives") seek final approval of the Settlement Agreement and Release ("Settlement Agreement") (Dkt. No. 67-1). The Settlement Agreement resolves the Named Plaintiffs' class action claim against Defendant Prentice Capital Management, L.P. ("Defendant") under the Worker Adjustment and Retraining Notification (WARN) Act (29 U.S.C. §§ 2101 – 2109) arising from the closure of the home office of KB Toys, Inc. located at 100 West Street, Pittsfield, Massachusetts 01201 (the "Facility") on or about December 11, 2008.

The *Joint Motion For Order (1) Preliminarily Approving Settlement Agreement; (2) Approving Form And Manner Of Notice To The Proposed Settlement Class; And (3) Scheduling A Final Fairness Hearing For The Final Consideration And Approval Of The Settlement* ("Joint Motion for Preliminary Approval") (Dkt. No. 67) was filed with the Court on November 8, 2012 by the Named Plaintiffs and Defendant (the "Parties") and allowed by the Court on November

1

14, 2012. (Dkt. No. 68). Counsel for the Named Plaintiffs mailed approved notices to the class members contemplated by the Settlement Agreement on December 6, 2012. (Dkt. No. 72-1, ¶ 18).[1] The Motion for Final Approval was filed with the Court on January 29, 2013. The Court held a fairness hearing on the Settlement Agreement on January 31, 2013. No objections to the Settlement Agreement have been submitted. *Id.* Of the 162 individuals to whom notice of the Settlement Agreement was sent, one individual returned an opt-out form to counsel to Named Plaintiffs.[2] *Id.* Additionally, on November 16, 2012, Defendant sent notices of the settlement to federal and state officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b), and more than 90 days has now elapsed without any objection or comment being received by any such officials. Therefore, based on the submissions of the Parties and the lack of any objections from those notified of the Settlement Agreement, the Court finds as follows:

## I.    Certification of the Settlement Class is Appropriate

Certification of the settlement class is appropriate pursuant to Fed. R. Civ. P. 23(a) and (b)(3). The Joint Motion for Preliminary Approval sought certification of a settlement class consisting of "all former employees of KB Toys, who worked at or reported to the Facility, and who were terminated and/or laid off involuntarily and without cause on or between December 11, 2008, and February 9, 2009, as part of, or as the reasonably foreseeable consequence of, the plant closing or mass layoffs as defined by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.*, ordered by KB Toys and/or the Defendant on or about December

---

[1] In an abundance of caution, Plaintiffs' counsel also sent a separate, approved notice to former KB Toys employees who were listed in KB Toys' records as having termination dates after February 9, 2009, and who therefore are not included in the Settlement Class. The purpose of the notice was to provide an opportunity for such former employees to contest their exclusion from the class and claim a portion of the settlement fund. Plaintiffs' counsel has advised the Court that no such persons have contested their exclusion or requested payment.

[2] Although some notices were returned undelivered, Plaintiffs' Counsel located new addresses and re-mailed the notices for those individuals prior to the January 31st fairness hearing. By that time, only 13 of the 162 class member notices remained undelivered.

11, 2008 through February 9, 2009, and who do not file a valid and timely request to opt-out of the class (the 'Settlement Class')". (Dkt. No. 67, at 8). Exhibit A to the Settlement Agreement identified 162 former employees of KB Toys believed to fall within the definition of the Settlement Class. (Dkt. No. 67-1, Ex. A). After notification of the Settlement Agreement was sent to the last known addresses for these former employees, one such individual opted out. (Dkt. 72-1, ¶ 18).

"To obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)." *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003). All the prerequisites for certification of the Settlement Class are present, as set forth below.

    a.    Numerosity: The numerosity factor of Fed. R. Civ. P. 23(a)(1) is met because the Settlement Class numbers 161 former employees ("Settlement Class Members"), clearly making joinder impracticable.

        b.    Commonality: The commonality factor of Fed. R. Civ. P. 23(a)(2) is met because there are numerous questions of law or fact common to every Settlement Class Member, namely, (1) whether the class members lost their employment as a result of "plant closure" or "mass layoff" as defined in the WARN Act; (2) whether Defendant and KB Toys were a "single employer"; and (3) whether the Defendant was excused from the 60-day notice requirement under the WARN Act through the "faltering company" and/or "unforeseeable business circumstances" exceptions. In short, the Settlement Class Members' claims raise identical issues regarding the circumstances surrounding their layoffs and, thus, the alleged violations of the WARN Act. The issues are common contentions "capable of

3

class-wide resolution—which means that determination of [their] truth or falsity will resolve [issues] that [are] central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011)

c.   Typicality:  The typicality factor of Fed. R. Civ. P. 23(a)(3) is met here as "the claims . . . of [Plaintiffs who are] the representative parties [are] typical of the claims . . . of the class."  The Named Plaintiffs have the same claim based on the same facts as the other Settlement Class Members.  As with the Settlement Class Members, the Named Plaintiffs claim that they were terminated without cause as a result of the closure of the Facility and were not provided the full sixty days' advance written notice of such closure.

d.   Adequacy of Class Representatives:  The requirements of Fed. R. Civ. P. 23(a)(4) are met based on the following.  The Named Plaintiffs, who are the proposed class representatives, have diligently prosecuted this action and will continue to do so, have no conflict of interest with the other Proposed Settlement Class Members, and have diligently prosecuted, represented and protected the interests of the proposed Settlement Class and will continue to do so.  (Dkt. No. 72-1, ¶ 28).  In addition, Class Counsel, which have, between them, prosecuted in excess of one hundred ninety (190) WARN Act actions including at least ninety (90) WARN Act Class Actions in which one or both have been appointed class counsel.  (Dkt. No. 67-2, ¶¶ 14 – 13).  Class Counsel are well qualified and experienced to represent the Class Members.

The Settlement Class also meets the requirements of Fed. R. Civ. P. 23(b)(3).  I find that for purposes of settlement, the common questions of law and fact that affect all Settlement Class

4

Members predominate over any questions affecting only individual members. Also for purposes of settlement, a class action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons:

a.    Settlement Class Members were given a reasonable opportunity to opt-out of the Settlement Agreement, allowing them to pursue any interest in individually controlling the prosecution of a separate action under the WARN Act.

b.    No other litigation concerning the WARN Act rights of any Settlement Class Member is currently pending.

c.    Concentrating all potential litigation concerning the WARN Act rights of the Settlement Class Members in this Court for purposes of settlement will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all Settlement Class Members.

d.    By virtue of the terms of the Settlement Agreement, management of this action as a class action should present no difficulties.

Having satisfied all the requirements of Fed. R. Civ. P. 23(a) and (b)(3), certification of the Settlement Class is appropriate.

## II.    Appointment of Class Counsel

Appointment of Lankenau & Miller, LLP and The Gardner Firm, P.C. ("Class Counsel") as class counsel is appropriate here pursuant to Fed. R. Civ. P. 23(g)(1)(A). Class Counsel performed extensive work identifying or investigating potential claims in this action. (Dkt. No. 67-2, ¶ 13; Dkt. No. 72-1, ¶ 13). Class Counsel has extensive knowledge concerning, and experience handing, WARN Act class action lawsuits. (Dkt. No. 67-2, ¶¶ 14-23). Class Counsel

5

has committed substantial resources to representing the class. (Dkt. No. 72-1, ¶¶ 24-25, Ex. A, at 15-23). Additionally, Class Counsel will be responsible for administering the Qualified Settlement Fund ("QSF") from which the settlement funds shall be distributed to the Settlement Class Members. (Dkt. No. 72-1, ¶ 25). Having satisfied the requirements of Fed. R. Civ. P. 23(g)(1)(A), appointment of Lankenau & Miller, LLP and The Gardner Firm, P.C. is appropriate.

## III.    Appointment of Class Representatives

Appointment of Named Plaintiffs as class representatives is appropriate here. Named Plaintiffs have been diligent and active in pursuing the class claim and have worked closely with Class Counsel in initiating and prosecuting the action. (Dkt. No. 72-1, ¶ 28). Named Plaintiffs have no apparent conflict of interest with the other Settlement Class Members and have fairly and adequately represented the interest of the Settlement Class. *Id.* For these reasons, appointment of Named Plaintiffs as Class Representatives is appropriate.

## IV.    Adequacy of the Notice to the Settlement Class

The content and manner of the notice ("Class Notice") to the Settlement Class Members satisfied Fed. R. Civ. P. 23(c)(2)(B). The Class Notice contains all required content. The Class Notice describes the nature of the action, the Settlement Class definition, the claims, issues and defenses, that a Settlement Class Member may appear by counsel, that the Settlement Class Members may elect to be excluded from the Settlement Class, the time and manner for requesting exclusion, and that the Settlement Agreement, if approved, will bind all Settlement Class Members who do not request exclusion. (Dkt. No. 67-3; Dkt. No. 72-1, ¶ 18).

Class Counsel mailed the Class Notices to the last known addresses of each Settlement Class Member on December 6, 2012. (Dkt. No. 72-1, ¶ 18). This manner of providing notice is well accepted. *See While v. National Football League*, 41 F.3d 402, 408 (8th Cir. 1994);

*Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1983); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 614 (W.D. Pa. 1983); *Trist v. First Federal Savings & Loan Association*, 89 F.R.D. 1, 2 (E.D. Pa. 1980).

## V. Final Approval

The Settlement Agreement is fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23(e)(2). It is well settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Further, public policy favors settlements of class action lawsuits. *See Howe v. Townsend (In re Pharm. Indus. Average Wholesale Price Litig.)*, 588 F.3d 24, 36 (1st Cir. 2009) (citing *Durrett v. Housing Auth.*, 896 F.2d 600, 604 (1st Cir. 1990)); *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) (citing *Durrett*, 896 F.2d at 604). Accordingly, the Court should approve the Settlement Agreement if, following a hearing, the Court determines that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

"When considering a motion for final approval for a class settlement, the Court must conduct a detailed assessment of the settlement terms, the class members' interests, the interests of other third parties that might be affected, and the circumstances of the litigation. … To assess the fairness of a settlement, case law offers a 'laundry list of factors,' ultimately involving a decision by the trial judge 'balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.' The factors considered by other courts include (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages,(6) the risks of maintaining the

class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Baptista v. Mut. of Omaha Ins. Co.*, 859 F. Supp. 2d 236, at 240-41 (D.R.I. 2012) (quoting *Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 44 n.13 and *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d. Cir. 1974)). Consideration of these factors favors final approval of the Settlement Agreement.

### A.    The Complexity, Expense and Likely Duration of the Litigation

The complexity of continued litigation favors approval of the Settlement Agreement. This litigation has been ongoing for nearly 29 months (nearly four years when including Named Plaintiffs' adversary proceeding in KB Toys' bankruptcy) without a ruling on any of the major issues in the case. (Dkt. No. 72-1, ¶¶ 91-10). *See also, Contini v. KB Toys, Inc. (In re KB Toys, Inc.)*, Adv. Pro. No. 09-50946 (Bankr. D. Del. May 1, 2009). Those issues include: 1) whether KB Toys violated the WARN Act when it closed the Facility without providing 60 days' advance written notice to those who were terminated without cause as a result of such closure; 2) whether class certification is appropriate;[3] 3) whether Defendant is a "single employer" with KB Toys; and 4) whether Defendant is excused from WARN Act liability under the statutory affirmative defenses asserted ("faltering company" or "unforeseeable business circumstances").

While determination of the first issue is a relatively straightforward mathematical analysis, each of the remaining issues is complex in and of itself. If the Settlement Agreement is not approved and the Named Plaintiffs re-assert their motion for class certification (Dkt. No. 47), the Court would be faced with analyzing the opposition presented by Defendant. (Dkt. No. 51).

---

[3] While the Defendant has stipulated to class certification for the limited purpose of settling this case, Defendant has reserved the right to oppose class certification if the settlement is not approved. (Doc. 67-1, ¶¶ 3, 23).

Further, the Court would have to resolve Named Plaintiffs' "single employer" claim, another complex issue. A U.S. Department of Labor regulation (20 C.F.R. § 639.3(a)(2)) guides the analysis of this issue. That regulation "lists five factors to be considered in determining whether a partially or wholly owned subsidiary should be treated as a distinct 'employer' under the WARN Act, or instead as a 'single employer' along with its parent. These factors include: '(i) common ownership, (ii) common directors and/or officers, (iii) *de facto* exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.'" *United Automobile, Aerospace & Agricultural Implement Workers of America Local 157 v. OEM/Erie Westland, LLC.*, 203 F. Supp. 2d 825, 832-33 (E.D. Mich. 2002) (quoting 20 C.F.R. 639.3(a)(2)).

While determining the presence of some of the factors is relatively simple, analysis of others is complex. Moreover,answering these questions does not necessarily conclude the "single employer" analysis, because the list of factors in the DOL regulation "is not intended to be exhaustive... [and] the factfinder may... also... consider... other indicia of corporate 'sameness'... such as nonfunctioning of officers and directors, gross undercapitalization, and other circumstances that demonstrate a lack of an arm's-length relationship between the companies.'" *UAW Local 157*, 203 F. Supp. 2d at 832-33 (quoting *Pearson*, 247 F.3d 471, 491 (3d Cir. 2001)).

Finally, the Court would have to resolve Defendant's statutory affirmative defenses: "faltering company" and "unforeseeable business circumstances". The "faltering company" issue would require the Court to determine: 1) whether the layoffs at issue constituted a "plant closing" and not a "mass layoff"; 2) whether KB Toys had inadequate capital to continue functioning and, as such, was in a faltering state; 3) whether KB Toys was actively seeking

capital at the time the 60-day notice would have been required; 4) whether KB Toys had a realistic opportunity to obtain the financing sought; 5) whether the financing would have been sufficient, if obtained, to enable KB Toys to avoid or postpone the shutdown; and 6) whether KB Toys reasonably and in good faith believed that sending the 60-day notice would have precluded it from obtaining the financing. *See In re: APA Transport Corp.*, 541 F.3d at 246-47 (citing 20 C.F.R. § 639.9(a)).

The "unforeseeable business circumstances" issue would require the Court to determine: 1) whether "some sudden, dramatic… action or condition outside the employer's control" caused the "plant closing" or "mass layoff"; and 2) whether "[t]he employer… exercise[d] such commercially reasonable business judgment as would a similarly situated employer in predicting" such action or condition. *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1008 (9th Cir. 2004) (citing 20 C.F.R. § 639.9(b)(1)-(2)). Analysis of these issues would require the Court to consider evidence of, among other things, sales trends and finance in the children's toys retail industry during 2008, an unprecedented era of volatility in retail markets.

Further, the Court would have to consider whether KB Toys gave "as much notice as [was] practicable" and whether any written notice provided to the terminated employees contained a "brief statement of the basis for reducing the notification period" including "information that would assist [the employees] in determining whether the notice period was properly shortened", and not merely an "assert[ion of] litigation convenient but factually *post hoc* justifications for [the employer's] actions." *Weekes-Walker v. Macon County Greyhound Park, Inc.*, Case No. 3:10-cv-895-MEF, 2012 U.S. Dist. LEXIS 93168, at *39 (M.D. Ala. July 6, 2012) (internal citations omitted).

Undoubtedly, these issues are complex. Approval of the Settlement Agreement would

conserve the considerable public and private resources required to resolve them.

B. The Reaction of the Class

On December 6, 2012, Class Counsel mailed Class Notices to the Settlement Class

Members to their last known addresses, as reflected by personnel records of KB Toys'

employees obtained during discovery. (Dkt. No. 72-1, ¶ 18). To date, only one of the 162

Settlement Class Members has opted-out of the Settlement Agreement, and none have submitted

any objections to Class Counsel. *Id.* Further, no Settlement Class Member presented any

objection to the Settlement Agreement at the January 31, 2013 fairness hearing. The lack of

significant opposition to the Settlement Agreement strongly favors final approval. *See Peebles v.*

*Inoveris, LLC*, Case No. 2:09-053, 2010 U.S. Dist. LEXIS 35590, at * 3 (S.D. Ohio Apr. 12,

2010) (final approval granted to settlement of WARN Act class action where no class members

objected and four class members opted out.), *aff'd*, 2010 U.S. Dist. LEXIS 42270, at *2 (S.D.

Ohio Apr. 29, 2010).[4]

C. The Stage of the Proceedings and the Amount of Discovery Completed

The Named Plaintiffs and Defendant engaged in extensive discovery in this case,

including interrogatories, requests for production, an on-site document inspection, an extraction

of emails from the computer of a non-party witness, and eight depositions across three states.

(Dkt. No. 72-1, ¶ 13). The Named Plaintiffs filed a motion for class certification, which has been

fully briefed by the Parties. (Dkt. Nos. 47, 51, and 57). The Parties filed cross motions for

---

[4] *See also, Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (citing *In re Marine Midland Motor Vehicle Leasing Litig.*, 155 F.R.D. 416, 420 (W.D.N.Y. 1994); *Dillard v. City of Foley*, 926 F. Supp. 1053, 1063 (M.D. Ala. 1996); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 56-57 (S.D.N.Y. 1993); *In re Fleet/Norstar Secs. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996)); *Laskey v. Int'l Union*, 638 F.2d 954 (6th Cir. 1981) (holding that a "small number of objectors is a good indication of the fairness of the settlement"); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2007) (same). In fact, "[a] settlement can, of course, be fair notwithstanding a large number of objectors." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982).

summary judgment, which have also been fully briefed by the Parties. (Dkt. Nos. 42, 45, 53, 58, 60, and 62). The Parties are well aware of the strength of their respective cases and are in a position to appreciate the risks of further litigation. Such awareness and appreciation favor final approval of the Settlement Agreement. *See e.g. In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D. N.Y. 1985) (approving a settlement because the parties had engaged in sufficient discovery and motion practice and both parties had a "clear view of the strengths and weaknesses of their cases"); *In re Nationwide Fin. Servs. Litig.*, Case No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *14-15 (S.D. Ohio Aug. 18, 2009) (approving a settlement in part because "the Settlement occurred only after plaintiffs and their counsel had the opportunity to assess the facts supporting their claims, the legal and factual defenses likely to be raised by Defendants, the difficulty of establishing damages, and the risks of continued litigation").

### D.    The Risks of Establishing Liability

Continued litigation poses great risk to the Named Plaintiffs and the Settlement Class. To hold Defendant liable, the Named Plaintiffs would have to prevail on the merits of their underlying WARN Act claims and their "single employer" allegation against Defendant. Further, the Named Plaintiffs would have to overcome Defendant's opposition to class certification. Finally, the Named Plaintiffs would have to withstand Defendant's statutory affirmative defenses.

Defendant also faces great risk in continued litigation. The Named Plaintiffs estimate that the theoretical maximum claim for the entire class is approximately $850,000. (Dkt. No. 72-1, ¶ 21).

### E.    The Risks of Establishing Damages

The risks of establishing damages are great. As indicated, Named Plaintiffs have asserted

.

a theoretical maximum claim for the entire class at approximately $850,000. In its memorandum
in opposition to Named Plaintiffs' motion for class certification, Defendant attacked the
authenticity of the records upon which Named Plaintiffs base their estimation. (Dkt. No. 51, at
5-8, 11-13). A ruling on this issue adverse to the Named Plaintiffs, would have devastating
consequences for Named Plaintiffs' class claim and the damages claimed thereunder.

F.    The Risks of Maintaining the Class Action Through the Trial

There is some risk that continued litigation could make maintenance of a class action
difficult. It has been over four years since KB Toys shut down and terminated its employees.
The further passage of time could present a challenge to the maintenance of the class action as
the Settlement Class Members move or lose interest.

G.    The Ability of the Defendants to Withstand a Greater Judgment

Any ability of Defendants to withstand a greater judgment carries little weight in this
analysis in comparison to the substantial risks faced by Named Plaintiffs and the Settlement
Class Members if this litigation continues.

H.    The Range of Reasonableness of the Settlement Fund
       in Light of the Best Possible Recovery

Named Plaintiffs estimate that the best possible recovery for their class claim is
$850,000. (Dkt. No. 72-1, ¶ 21). The Settlement Amount is $193,000, 23% of the estimated
best possible recovery. (Dkt. No. 67-1, ¶ 2). While "a fine-tuned equation by which to
determine the reasonableness of the size of a settlement fund does not exist" (*In re Relafen
Antitrust Litigation*, 231 F.R.D. 52, 72 (D. Mass. 2005)), 23% of the best possible recovery is
well within the range of reasonableness for the settlement of a class action WARN Act case.
*See, e.g.,Kohlstadt v. Solyndra, LLC (In re Solyndra, LLC)*, Adv. Pro. No. 11-53155-MFW
(Bankr. D. Del. Oct. 15, 2012) (Court approved a WARN Act class action settlement of

13

.

$3,500,000 where the best possible recovery was $15,000,000, i.e. 23% of maximum claim); *Nieves v. Community Choice Health Plan of Westchester, Inc.*, Case No. 7:08-cv-00321-VB-PED (S.D.N.Y. May 8, 2012) (Court approved a WARN Act class action settlement of $72,250 where the best possible recovery was $700,000, i.e. 10% of maximum claim); *Wenzel v. Partsearch Tech., Inc. (In re Partsearch Tech., Inc.)*, 453 B.R. 84, 92-102 (Bankr. S.D.N.Y. 2011) (Court approved a WARN Act class action settlement of $183,000 where the best possible recovery was $1,100,100, i.e. 17% of maximum claim); *Schmittgen v. Mooney Airplane Company, Inc.*, Case No. 5:08-CV-00955-FB (W.D. Tex. Dec. 8, 2010) (Court approved a WARN Act class action settlement of $120,000 where the best possible recovery was $500,000, i.e. 24% of maximum claim).

## I. The Range of Reasonableness of The Settlement Fund to a Possible Recovery in Light of All the Attendant Risks of Litigation

As indicated, the risks of continued litigation are substantial. If Defendant prevails on the "single employer" issue alone, Named Plaintiffs and the Settlement Class Members would recover nothing because the only other potential defendant, KB Toys, is bankrupt and defunct. *See In re KB Toys, Inc.*, Case No. 08-13269 (KJC) (Bankr. D. Del. Dec. 1, 2009) (Court granted motion for a limited distribution to certain creditors with administrative claims in which KB Toys acknowledged that it had insufficient assets to satisfy its debts to its secured creditors). The very real risk of no recovery substantially diminishes the value of the best possible recovery at trial and favors approval of the Settlement Agreement.

## VI. Attorneys' Fee

The agreed attorneys' fee is appropriate. "In class action cases, attorney fees may be awarded from a common fund created for the benefit of the class." *Baptista*, 859 F. Supp. 2d at 242 (citing Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable

**14**

attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement")).
Here, the Parties have agreed to a disbursement from the QSF of "attorneys' fees to Class
Counsel totaling $61,000, plus costs of litigation and administration not to exceed $45,000."
(Doc. 67-1, ¶ 2).

"The Court may calculate such an award by using a lodestar method and multiplying a
reasonable hourly rate by the compensable hours the attorney worked on the matter or it may
base the fees on a reasonable percentage of the fund." *Id.* "While the First Circuit has not
established specific factors to assess a common fund fee request, district courts in this circuit
have considered the factors in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000),
including (1) the time and labor expended by counsel; (2) the magnitude and complexities of the
litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in
relation to the settlement; and (6) public policy considerations." *Id.* (citing *Lupron Mktg. and
Sales Practices Litig.*, No. MDL 143001-CV-10861 RGS, 2005 U.S. Dist. LEXIS 17456, 2005
WL 2006833 *3 (D. Mass. Aug. 17, 2005)). Each of the six factors set forth in *Baptista* favor
approval of the agreed attorneys' fee.

A.     The Time and Labor Expended by Counsel Favors Approval of the Fee Request

Class Counsel worked more than 900 hours litigating this case. (Dkt. No. 72-1. ¶ 24, Ex.
A, at 15 & Ex. B, at 8). Class Counsel engaged in extensive discovery. Class Counsel
propounded interrogatories and three sets of document requests to Defendant and responded to
the written discovery requests of Defendant. (Dkt. No. 72-1, ¶ 13). Class Counsel took six
depositions (two in Greenwich, CT, three in Boston, MA, and one in Albany, NY), defended two
depositions (one in Springfield, MA and one in Pittsfield, MA), conducted an on-site document
inspection (in Pittsfield, MA), and extracted emails from the computer of a third-party witness.

15

*Id.*

Further, Class Counsel conducted extensive briefing in this case. Class Counsel drafted and filed briefs opposing dismissal, supporting class certification, supporting Named Plaintiffs' motion for summary judgment, opposing Defendant's motion for summary judgment, supporting the Joint Motion for Preliminary Approval, and supporting the Motion for Final Approval. (Dkt. Nos. 22, 25, 43, 48, 57-58, 62, 67 and 72). Class Counsel attended and made oral argument at the hearing on Defendant's motion to dismiss in Springfield, MA. (Dkt. No. 72-1, ¶ 11).

For the 900+ hours worked by Class Counsel, Named Plaintiffs' seek $61,000, which amounts to less than $68 for each of the 900+ hours worked by Class Counsel in litigating this case, a bargain in any legal market. That rate is reduced even further when taking into consideration Class Counsel's attendance at the final fairness hearing and future work administering, and making disbursements from, the QSF. (Dkt. No. 67-1, ¶ 2).

B.    The Magnitude and Complexities of the Litigation

As discussed, the complexity of the unresolved issues in this case is great. More generally, WARN Act class action litigation is highly specialized and particularly complex. The Settlement Agreement itself reflects recognition by the Parties that there are significant, complex issues regarding the application of the WARN Act and the various cases and regulations interpreting the Act. (Dkt. No. 67-1, ¶¶ A-D). Further, WARN Act class action litigation is made more difficult because large defendant companies almost invariably can afford to hire very resourceful and high quality lawyers. This case was no exception. The lawyers at Pierce Atwood LLP very ably represented the Defendant by participating fully in all discovery discussed above, opposing Named Plaintiffs' motion for class certification, filing two dispositive motions, and opposing Named Plaintiffs' motion for summary judgment. Class Counsel made

great efforts to address the complexity of the issues presented by the case and meeting the opposition of Defendant.

### C.     The Risk of the Litigation

As discussed, the risks of continued litigation are great. The risks faced by Named Plaintiffs are shared by Class Counsel who took this case on a contingency fee basis. (Dkt. No.72-1, ¶ 8) (*see also*, Doc. 67-1, ¶ I).

### D.     The Quality of Representation

Class Counsel have provided quality representation to the Settlement Class. Class Counsel did not give up their efforts to recover for the Settlement Class when it became clear that KB Toys had insufficient assets to pay unsecured creditors. Class Counsel pursued Defendant in this Court, defeating Defendant's motion to dismiss. (Dkt. Nos. 19, 20, 22-23, 25 and 28, at 1). Additionally, Class Counsel conducted the extensive discovery and briefing described above. Further, Class Counsel have considerable experience handling class action WARN Act claims. (Dkt. No. 67-2, ¶¶ 15-24). This experience, combined with the specific efforts made in this case, demonstrates the quality of representation provided to the Settlement Class.

### E.     Requested Fee in Relation to the Settlement

The agreed attorneys' fee equals one-third (33.3%) of the Settlement Amount (minus Service Payments of $5,000 to each Named Plaintiff). This is common in settlements of WARN Act class actions. "[I]n more than 30 WARN actions class counsel was awarded a one-third fee." *Guippone v. BH S&B Holdings, LLC*, Case No. 09 Civ. 01029 (CM), 2011 U.S. Dist. LEXIS 126026, at *27-28 (S.D.N.Y. Oct. 28, 2011) (citing *In re Consolidated Freightways Corporation*, Case No. 02-24284-MG (Bankr. C.D. Cal.); *Powell v. Creighton Incorporated*,

17

Case No. 1:01CV779 (M.D.N.C.); *In re CTC Communications Group, Inc.*, Case No. 02-12873

(PJW) (Bankr. D. Del.); *Madley v. Florida Cypress Gardens, Inc.*, Case No. 8:03-CV-00795-T-

17TBM (M.D. Fla.); *In re Dollar Land, Inc.*, Case No. 02-14547 (Bankr. E.D. Pa); *Johnson v.*

*GMAC Mortgage Group, Inc.*, Case No. C04-2004-LRR, (N.D. Iowa); *Morris v. Greenwood*

*Mills. Inc.*, Civil Action No. 8:02-221-24, (D. S.C.); In re Inacom Corp, Case No. 00-2426

(PJW) (Bankr. D. Del.); *Teligent, Inc.*, Case No.: 01-12974(SMB) (S.D.N.Y.); *Bandel v. L.F.*

*Brands Marketing, Inc.*, Civil Action No. 04 CV 1672 (CSH) (S.D.N.Y.); *Baker v. The National*

*Machinery Company*, Case No. 3:02CV7444 (N.D. Ohio); *Deninno v. Penn American Coal*

*Company, L.P.*, Civil Action No. 03-0320 (D. W.D. Pa.); *In re Pliant Systems, Inc.*, Case No. 01-

01264-5 ATS (Bankr. E.D.N.C.); *Adkins v. Pritchard-Brown*, Case No. 5:03CV129-OC 10 GRJ,

(M.D. Fla.); *Gibson v. Sonic Foundry, Incorporated*, Case No. CV-03-4062 SVW (CD. Cal.); *In*

*re Thomaston Mills, Inc.*, Case No. 01-52544 (RFH) (Bankr. M.D. Ga); *Ballentine v. Triad*

*International Maintenance Corporation*, Case No. 0 1-1 0357 (E.D. Miss.); *Trout v. Transcom*

*USA*, Case No. 1:03-cv-0537-LJM-WTL, (S.D. Ind.); *Padgett v. Wireless Retail, Inc.*, Case No.

CV04-1170 PHX-SR, (D. Ariz.)).[5]  There is ample precedent for awarding a third (33.3%) of the

common fund as attorneys' fees in WARN Act class action settlements.

Further, this litigation was undertaken on a contingent fee basis.  (Dkt. No. 67-1, ¶ I).

The Named Plaintiffs agreed to the one-third fee in their contract with Class Counsel.  (Dkt. No.

72-1, ¶ 8).  It has been the expectation of the Named Plaintiffs and Class Counsel since the

inception of the litigation that Class Counsel would be paid a third (33.3%) of the fund created, if

Class Counsel were successful enough to create one.  And, as is typical of this type of work,

---

[5] In addition to the cases cited by the *Guippone* Court, other courts have awarded a third of the common fund as
attorneys' fees in WARN Act class action settlements.  *See Kizer v. Summit Partners, L.P.*, Case No. 1:11-CV-38
(E.D. Tenn. Jul. 10, 2012); *Nieves v. Community Choice Health Plan of Westchester, Inc.*, Case No. 7:08-CV-321
(S.D.N.Y. May 8, 2012); *Robbins v. Durham School Services, L.P.*, Case No. 1:09-CV-609 (W.D. Tex. May 31,
2011); *Hackworth v. Telespectrum Worldwide, Inc.*, Case No. 3:04-CV-1271 (S.D. W.Va. Aug. 3, 2006).

Class Counsel has worked for nearly four years without any compensation at all and with the very real risk that they may never be paid for the work, unless they were successful. (Dkt. No. 72-1, ¶ 8).

Finally, the Class Notice, which was mailed to each of the Settlement Class Members, fairly apprised the Class that the Settlement Agreement contemplated one-third (33.3%) of the Settlement Amount, minus the Service Payments to the Named Plaintiffs, as an attorneys' fee. (Dkt. No. 67-3, ¶ 9). Class Counsel have received no objections or complaints from any Settlement Class Member about the fees sought. (Dkt. No. 72-1, ¶ 18).

F.  Public Policy Considerations Favor Approval

In approving an attorneys' fee equal to one third of the settlement fund in a WARN Act class action similar to the present case, the *Guippone* Court stated that "[p]ublic policy weighs in favor of granting Class Counsel's requested fees. [B]ut for the work of Class Counsel and their willingness to bear the entire risk of bringing this litigation to fruition, Class Members likely would receive nothing on their claims. The WARN Act is a remedial statute designed to protect the rights of employees. ... Fair compensation for attorneys who take on such litigation furthers the remedial purpose of such statutes. Moreover, awarding Class Counsel's requested percentage of the fund encourages prompt and efficient resolution of class litigation such as this." *Guippone*, 2011 U.S. Dist. LEXIS 126026, at \*37-38 (citing *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997); *Washington v. Aircap Industries, Inc.*, 860 F. Supp. 307, 315 (D.S.C. 1994); *Bradley v. Sequoyah Fuels Corp.*, 847 F. Supp. 863, 867 (E.D. Okla. 1994); *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993). The same holds true here.

In consideration of the foregoing, the Court finds that Class Counsel should be awarded

19

an attorneys' fee equal to one third (33.3%) of the proceeds of the Settlement Amount actually disbursed by the QSF to the Settlement Class Members and that no attorneys' fee shall be assessed against the Service Payments.

## VII. Reimbursement of Costs

As of January 29, 2013, Class Counsel have incurred $39,475.99 in costs pursuing this litigation. (Dkt. No. 72-1, ¶ 25, Ex. A, at 15-23). Class Counsel incurred travel expenses associated with the hearing on Defendant's motion to dismiss in Springfield, MA, the eight depositions in Connecticut, Massachusetts and New York, the on-site document inspection Pittsfield, MA, and the final fairness hearing in Boston, MA. (Dkt. No. 72-1, ¶ 25). Class Counsel incurred further expenses in hiring court reporters for six of the eight depositions and purchasing transcripts for each of the eight depositions. *Id.* Class Counsel incurred further expenses extracting emails from the computer of a non-party witness. *Id.* Class Counsel incurred further expenses conducting the legal research required to brief Defendant's motion to dismiss, Named Plaintiffs' motion for class certification, the Parties' cross motions for summary judgment, the joint motion for preliminary approval of the class action settlement, and the motion for final approval of the class action settlement. *Id.* Class Counsel incurred further expenses printing and mailing Class Notices. *Id.* All these expenses were necessarily incurred by Class Counsel to litigate this case and to administer the settlement. Further, they are less than the $45,000 cap set in the settlement agreement, which should easily cover future expenses associated with administering the QSF. (Dkt. No. 67-1, ¶ 2).

## VIII. Service Payments

The Settlement Agreement contemplates a $5,000 Service Payment to each Named Plaintiff. (Dkt. No. 67-1, ¶ 2). "An incentive award to a named plaintiff 'can be appropriate to

20

encourage or induce an individual to participate' in a class action." *Baptista*, 859 F. Supp. 2d at 244 (citing *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 2011 U.S. Dist. LEXIS 113980, 2011 WL 4537726 (D.P.R, 2011)). "The purpose of incentive awards is 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation.'" *Id.* (citing *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002)). In addition to providing information necessary to draft and file the complaint initiating this action, the Named Plaintiffs worked closely with Class Counsel to: 1) identify and locate potential witnesses; 2) respond, and produce documents in response, to Defendant's written discovery requests; and 3) provide sworn declarations (Dkt. Nos. 48-1 and 48-2) in support of their motion for class certification. (Dkt. No. 72-1, ¶ 28). Both Named Plaintiffs were deposed by Defendant. *Id.* This required both Named Plaintiffs to make alternate arrangements for the care of their children. *Id.* Named Plaintiffs made similar sacrifices in planning to attend the mediation scheduled for May 21, 2012 with U.S. Magistrate Judge Jennifer C. Boal in Boston, MA.[6] (Dkt. No. 72-1, ¶¶ 14, 28). Additionally, Named Plaintiffs attended the final fairness hearing in support of the Settlement Agreement. No Settlement Class Member has objected to the award of the Service Payments, which were clearly spelled out in the Class Notices. (Dkt. No. 67-3, ¶ 9) ("The Settlement Amount shall be equal to $193,000 and shall be distributed by Class Counsel as follows: (a) the sum of $5,000 to each of the Class Representative for their services rendered in this action, from which no attorney fees will be withheld (the 'Service Payments')...."). Named Plaintiffs have expended considerable effort in pursuing this case. Consequently, the agreed Service Payments are appropriate.

## IX.    *Cy Pres* Designation

[6] That mediation was postponed by the Court on May 18, 2012. By that point, the Named Plaintiffs had already made arrangements to attend the mediation set for May 21, 2012. This was particularly difficult for Ms. Contini who rearranged her work schedule while her employer conducted an annual audit. (Dkt. No. 72-1, ¶¶ 14, 28).

The Settlement Agreement contemplates that any portion of the Settlement Amount that is not disbursed to the Settlement Class Members (other than for Service Payments, attorneys' fees, and reimbursement of litigation expenses) shall be disbursed to the Impact Fund as the *cy pres* recipient. (Dkt. 67-1, ¶ 12). According to an affidavit submitted with the Joint Motion for Preliminary Approval, the Impact Fund is a 501(c)(3) non-profit organization that provides grants, technical support, and training on issues that arise in impact litigation, particularly class action litigation. The Impact Fund also serves as co-counsel and amicus counsel in select class action and impact litigation. More than 80% of the Impact Fund's work involves direct representation of workers or support of other attorneys, through training and grants, representing workers. The Impact Fund recently provided a grant for a case brought in Rhode Island under the WARN Act, *Colibri Workers for Rights and Justice v. Founders Equity*, No. 01-00241 (D. Rhode Island 2009) (grantee: Fuerza Laboral). The Impact Fund has also provided grants for numerous cases brought to protect the rights of persons living in Massachusetts. The Impact Fund has been approved as a *cy pres* recipient by a number of state and federal courts in the past in a variety of employment-related cases. (Dkt. No. 67-6). Based on these facts, the Court finds that such designation is appropriate.

Based on the foregoing, the Court finds that the Settlement Agreement is fair, reasonable and adequate and accordingly,

IT IS HEREBY ORDERED THAT:

1.     The Motion for Final Approval is GRANTED and the Settlement Agreement, attached to the Joint Motion for Preliminary Approval (Dkt. No. 67-1), is APPROVED as fair, reasonable, and adequate. The Parties are directed to implement its terms.

2.     The Court certifies the following class pursuant to Fed. R. Civ. P. 23(b)(3): "All

former employees of KB Toys, who worked at or reported to the facility located at 100 West Street, Pittsfield, Massachusetts, and who were terminated and/or laid off involuntarily and without cause on or between December 11, 2008, and February 9, 2009, as part of, or as the reasonably foreseeable consequence of, the plant closing or mass layoffs as defined by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101 et seq., ordered by KB Toys and/or Prentice Capital Management, L.P., on or about December 11, 2008 through February 9, 2009, and who have not filed a valid and timely request to out-out of the class." Only one person, Leslie Wildman, has filed a valid and timely request to opt-out, and she therefore is not a member of the Settlement Class as defined above.

3.  Lankenau & Miller, LLP and The Gardner Firm, P.C. are appointed as Class Counsel.

4.  Shannon Contini and Aaron Beatty are appointed as Class Representatives.

5.  An attorneys' fee equal to one third (33.3%) of the proceeds of the Settlement Amount actually disbursed by the QSF to the Settlement Class Members is hereby APPROVED. No attorneys' fee shall be assessed against the Service Payments.

6.  Reimbursement of Class Counsel's litigation and administration expenses and costs not to exceed $45,000 is APPROVED as agreed in the Settlement Agreement. (Dkt. No. 67-1, ¶ 2).

7.  A $5,000 Service Payment to each Named Plaintiff is APPROVED as agreed in the Settlement Agreement. (Dkt. No. 67-1, ¶ 2).

8.  Designation of the Impact Fund as the *cy pres* recipient of any portion of the Settlement Amount that is not disbursed to the Settlement Class Members (other than for Service Payments, attorneys' fees for actual payments disbursed to the Settlement Class Members, and

23

reimbursement of litigation expenses) is hereby APPROVED.

9.     All members of the Settlement Class shall be bound by all of the terms, conditions

and obligations of the Settlement Agreement, and by all of the determinations and judgments in

this action concerning the Settlement. The claims of the named plaintiffs and all Settlement

Class members are hereby RELEASED in accordance with the terms of paragraph 5 of the

Settlement Agreement.

10.     Neither the Settlement, nor any of its terms or provisions, nor any of the

negotiations or proceedings in connection with it, shall be construed as an admission or

concession by any party of the truth of any allegation in the action or of any liability, fault or

wrongdoing of any kind.

11.     This action and all claims against the Defendant are hereby dismissed with

prejudice, and final judgment is hereby entered.

The Court shall retain jurisdiction with respect to all matters arising from or related to the

implementation of this Order.

Dated: *February 15, 2013*

*William A. Young*
WILLIAM G. YOUNG
UNITED STATES DISTRICT COURT JUDGE

24